# Commonwealth to use of D. C. Hyde & Co. *versus* Cope *et al.*

*Action on sheriff's official bond barred by plea and proof of former action pending.—Remedy against sheriff on his bond, exclusively under the Act of June 14th 1836.*

| | |
|---|---|
| 45 | 161 |
| 19 SC | 579 |
| 45 | 161 |
| 25 SC | 370 |
| 45 | 161 |
| f220 | 203 |
| 45 | 161 |
| f224 | 167 |

1. In an action upon a sheriff's official bond the pendency of a former action upon the same bond, may be pleaded in bar: and if found by the verdict the plea is good.

2. The remedy of a party interested in the official bond of a sheriff is exclusively under the provisions of the Act of 14th June 1836.

ERROR to the Common Pleas of *Northampton county.*

This was an action of debt, brought to November Term 1855, No. 84, in the name of The Commonwealth for the use of Daniel C. Hyde and James S. Hyde, partners trading as D. C. Hyde & Co. against Jacob Cope, Peter Gross, John Haas, and Jacob S. Hartzell, who survived their co-obligor Jonas Lerch, and was founded on the official bond of Jacob Cope, late high sheriff of Northampton county.

The plaintiffs' declaration contained two counts :—

The first count set out the official bond, alleging that Jacob Cope, sheriff, "did not perform the duties of the office of sheriff of said county as by his office he was required to do," in that he refused or failed to execute the writ of *fi. fa.* No. 32, August Term 1855, D. C. Hyde & Co. *v.* C. P. Emmons & Co., upon the goods of C. P. Emmons & Co., in their store at Easton, and then in possession of Jacob Cope, sheriff, and for selling the same on other *fi. fas.* against Emmons alone, after the receipt of *fi. fa.* 32, August Term 1855, against C. P. Emmons & Co.

The second count charged the said Jacob Cope, sheriff, with making a false return upon *fi. fa.* No. 32, August Term 1855, D. C. Hyde & Co. *v.* C. P. Emmons & Co., in saying that no money was made, &c., the proceeds of sale having been exhausted by prior executions, when no prior executions had been issued against the firm of C. P. Emmons & Co.

To this the defendants pleaded "performance with leave," &c., *nil debet*, performance and payment with leave; and after an award in favour of plaintiffs, added the plea of "*non est factum*," and by leave of the court filed a special plea averring the existence of a former action on the sheriff's bond, pending in the Common Pleas of Northampton county, to November Term 1855, No. 83.

A motion to strike off this special plea was subsequently argued and refused.

The counsel for the plaintiffs then moved the court to "restore the cases to their order on previous trial-lists, the court having

9 WR.—11

[Commonwealth *v.* Cope *et al.*]

altered the list, and placed No. 84 before No. 83 for trial, without the consent of plaintiffs or their counsel." This motion was also denied; whereupon plaintiffs' counsel filed a written protest against the alteration complained of.

The main facts of the case were these:—On the 22d and 26th of May 1855, four writs of *fi. fa.* issued out of the Court of Common Pleas, in which James Tomer, Waterman & Osborne, Drake & Hulick, and George W. Housel were respectively plaintiffs against C. P. Emmons, and were directed to Jacob Cope as sheriff, under which he seized and sold the goods in a certain store in Third street, in Easton, and appropriated the proceeds of sale to the executions in the order in which they came to his hands.

On the 1st June 1855, a writ of *fi. fa.*, in which D. C. Hyde & Co. are plaintiffs, was issued against Charles P. Emmons and Oscar Freeman, partners trading as C. P. Emmons & Co. The sheriff under this execution levied upon the same goods, subject to the *fi. fas.* above named, and against C. P. Emmons alone, and made return to Hyde's execution that no money had been made on it, the proceeds having been exhausted by the prior executions against Emmons.

The plaintiffs, Hyde & Co., alleged that the sheriff had been guilty of a breach of his official duty, and of his bond, in thus appropriating the proceeds of the sale of the partnership effects to the executions issued against one of the partners, C. P. Emmons. It was proven on the trial that Emmons & Freeman had entered into an agreement of partnership sometime in February or March 1855, which was to commence on 1st of April following; that boxes came to the store addressed to C. P. Emmons & Co; that the sign over the store was altered from C. P. Emmons to C. P. Emmons & Co.; that business-cards were issued and distributed by Emmons in the name of C. P. Emmons & Co., and some purchases made in Easton in that name; that from the 1st of April all the property in the store was placed in the partnership, and it was one of the terms of the agreement between Emmons and Freeman that Emmons was to put into the concern the stock he had on hand when the partnership commenced.

On the trial the defendants requested the court to instruct the jury:—

1. If the jury believe that Oscar Freeman was guilty of fraud and deceit, by falsely pretending to Emmons that he was about to enter into a partnership when he had no intention of complying with his agreement in that respect, and that the said Freeman never has so complied; and that the said Emmons having discovered the said fraud, rescinded the said agreement, and resumed the exclusive possession and control of said store and goods, and proceeded to conduct business therewith in his own name and on

[Commonwealth *v.* Cope *et al.*]

his own account, and the said Freeman so far acquiesced therein as to abandon the said store and goods, and leave the place without returning to make any objection, the goods became so far the individual property of said Emmons as to be liable to levy and sale by his individual creditors, and plaintiff cannot recover.

2. If the jury believe the facts stated in the preceding point, the goods remaining in the store at the time of the levy, which had belonged to Emmons alone before the 1st of April, so far became his individual property as to be liable to levy and sale by his individual creditors, and plaintiffs can only recover as to the residue.

3. The utmost which plaintiffs can recover, in any aspect of the evidence, would be a *pro rata* share with *fi. fas.* 33 and 34, to August Term 1855, the value of the goods at a sheriff's sale, less the amount of costs of sale and rent paid to the lessor of the premises.

4. If the jury believe that C. P. Emmons did not object or consented to the levy and sale of said goods on the *fi. fas.* No. 25, 27, 28, and 29, to August Term 1855, and that Oscar Freeman has acquiesced in the resumption of exclusive control and possession of said goods by Emmons, and has made no objection to the levy and sale thereof upon the aforesaid writs of *fi. fa.* against Emmons alone, D. C. Hyde & Co. cannot complain of such levy and sale, and cannot recover.

5. There was no evidence that any of the goods sold by the sheriff were purchased of D. C. Hyde & Co. by C. P. Emmons & Co., or either of the members of the alleged firm.

6. This suit having been brought during the pendency of the prior action, No. 83 of November Term 1855, in this court upon the same official bond, the jury must find for the defendants.

The court below (FINDLAY, P. J.) negatived the first, second, and fourth points, decided that the fifth was immaterial, and that on the plea of former action pending on the same bond, the defendant was entitled to a verdict.

The jury returned their verdict as follows:—

"We find on the special plea of former action pending, filed May 2d 1860, in favour of the defendants, and upon the issues joined on all the other pleas we find in favour of the Commonwealth the sum of $15,000, and in favour of D. C. Hyde & Co., the plaintiffs in this issue, the sum of $269.01 damages, with costs of suit."

Whereupon the plaintiffs sued out this writ, averring,

1. That the court erred in permitting the plea of former suit pending to be filed in this case, it not being verified by affidavit, and being filed after pleas in bar, and arbitration and award.

2. In refusing to strike off the plea of former suit pending, it having been pleaded out of time, and should have been stricken

[Commonwealth *v.* Cope *et al.*]

off or treated as a nullity; and in charging the jury, as was done, with regard to the special plea of former action pending.

*A. E. Brown* and *S. L. Cooley*, for plaintiffs in error.

*H. D. Maxwell* (with whom were *Reeder & Green*), for defendant in error.

The opinion of the court was delivered, May 6th 1863, by

STRONG, J.—This was an action upon a sheriff's official bond, to which the defendants pleaded at first performance and payment. Subsequently they added the plea of *non est factum*, and also pleaded specially in bar the pendency of a former action upon the same bond. The court having refused to strike off the last-mentioned plea, the case went to trial on this state of the record, and on all the issues except the last there was a verdict for the plaintiffs. On the plea of a former action pending, a verdict was returned for the defendants. The question thus presented was, what judgment ought to be given upon the whole record?

Were this the ordinary case of a suit upon a common bond, the matter would be free from difficulty. In such a case, a verdict finding the pendency of a former action pleaded in bar, establishes nothing material to the controversy between the parties. It does not affect the merits of a plaintiff's claim. As a general rule, a defendant can make use of the pendency of a former action for the same cause, only by pleading it in abatement. He is permitted to plead it in abatement because the law will protect him against being harassed with two or more actions for the same thing, when a complete remedy may be secured by one. But this is a privilege he may waive, and he does waive it when he pleads to the action, for he thereby admits the mode by which the remedy is pursued to be correct. A plaintiff's claim is not defeated by the fact that a former action between the same parties for the same cause is pending, but it is the fact asserted by the plea in abatement that turns him over to the pursuit of his claim in the action first commenced. And there is no hardship in requiring one who would avail himself of a personal privilege, which neither denies the existence of a rightful claim against him, nor asserts his discharge from it, to use his privilege at the earliest moment, and to use it in the mode in which the law has accorded it to him.

The authorities are uniform in asserting the general rule to be, that the pendency of a former action for the same cause is pleadable only in abatement, and material only when thus pleaded. They recognise but one exception, if it may be called an exception. It is in actions for penalties at the suit of a com-

[Commonwealth *v.* Cope *et al.*]

mon informer, and the exception is founded upon the reason that the party who first sues is entitled to the penalty. It might be said that a former suit by a different informer is neither between the same parties nor substantially for the same cause. When the same party brings two suits for the same penalty, the pendency of the first can only be pleaded in abatement of the second.

But this rule of practice is not applicable to actions upon official bonds. Suits upon such bonds, when brought by individuals who have become entitled to an interest in them, are regulated by the Act of Assembly of June 14th 1836. With the conduct of them, or with their institution, the legal plaintiff has nothing to do. Hence, under the Act of 28th March 1803, as many different actions could be brought upon them as there were persons holding several interests, and the pendency of one was not a good plea, either in bar or in abatement, to a subsequent action upon the same official bond. Thus, though more than the amount of the penalty could not be recovered, the obligors might be compelled to pay costs repeatedly. The Act of 1836 introduced an entirely new system. It contemplates only one suit, and gives to all persons who have several interests the right to join in that suit, or to make use of the judgment recovered, if their cause of action accrue after the judgment. By it a new remedy is given to every person who can by any possibility be interested in the bond, and the remedy is defined and regulated by the statute. The legislature has prescribed the terms on which a party may use a security given to the Commonwealth, and the mode in which it shall be used. It is by joining in the suit commenced, not by bringing a second suit. And the remedy being a new one given by Act of Assembly, it must be exclusive, and prohibitory of any other. What stands in the way of a second suit upon an official bond is therefore not a rule of practice, but an Act of Assembly. To say of such a virtual prohibition, that it amounts to nothing unless it be pleaded in abatement, is to deny full effect to what the legislature has enacted. It cannot be so held without rendering possible very anomalous and unjust consequences. A judgment for the Commonwealth in the second action would undoubtedly be a bar to a recovery for the use of the plaintiff in the first. And, if so, then, though having a good cause of action when he brought his suit, he might be defeated and mulcted in costs, by no fault of his own, but by some other persons bringing a second action, and prosecuting it to judgment. Even more than this, though having brought his action in time, he may, after having been defeated, be barred from availing himself of the judgment obtained in the second action, for when it was recovered, the time during which the liability of sureties continues may have elapsed. The Act of

Assembly does not leave a door open for any such possible mischief.

It must be conceded that in Hartz *v.* The Commonwealth, 1 Grant's Cases 359, which was an action on the official bond of a justice of the peace, liberty was refused to a defendant to plead in bar the pendency of a former action on the same bond, after a jury had been impannelled to try an issue joined on the plea of *non est factum*, and the refusal was sustained by this court. Judge Black remarked, that the proffered plea was too late after a plea in bar. But in The Commonwealth *v.* Staub, 11 Casey 137, the pendency of a former action on a sheriff's bond was ruled to be a good plea in bar. There it was pleaded in bar, and the plaintiff demurred, but the plea was sustained, and the defendants obtained judgment. Thompson, J., did indeed decline entering upon any question of the regularity of the pleading in the case. No question was made about it in the argument, but the effect of the plea was considered, and it was held to be fatal to any recovery in the second action. The matter is therefore at rest.

This disposes of all the errors assigned, for they are resolvable into one. The plea found by the verdict for the defendants was a good plea in bar, and it having been found true, they were entitled upon the whole record to judgment.

The judgment is affirmed.