## Smith *versus* Johnson.

76     191·
25 SC °373

1. One of two adjoining owners of land is not bound to put his fence on the line unless he occupies up to it.

2. He may set his fence in on his own land and throw open to the public the land between his line and the fence, and thus be relieved from assisting to maintain a line fence.

3. Building a fence entirely on his own land does not authorize the owner to remove any portion of a line fence, that had been previously erected.

4. A line fence is the common property of the adjoining landholders, and the materials are so dedicated to the realty, that either removing them without the consent of the other is liable in trespass.

5. The defendant built his fence near the line on his own land and removed part of a line fence between him and the plaintiff, leaving a gap into the plaintiff's field. *Held*, that it was the duty of the plaintiff to protect his crops by building proper fences in a reasonable time; otherwise the defendant would not be liable for damage done by the cattle of others.

6. In closing the gap, the plaintiff had no right to extend his fence over on the defendant's land, even a few feet—but by so doing became a trespasser; the defendant had the right to throw down that portion of the fence on his land, and no action lay against him although his motives were malicious.

7. Dysart *v.* Leeds, 2 Barr 488; Jenkins *v.* Fowler, 12 Harris 308; Stoner *v.* Hunsicker, 11 Wright 513, followed.

May 20th 1874.    Before SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Juniata county :* Of · May Term 1874, No. 76.

This was an action of trespass q. c. f., brought April 14th 1873, by Richard Johnson against David Smith. The defendant and one John Thompson were owners of adjoining farms; the plaintiff was the tenant of Thompson.

Thompson and the defendant had some dispute about repairing their partition fence, which extended southwardly from the northern corner of their farms to the north side of a turnpike which passed east and west through both farms, and then from the south side of the turnpike southwardly to the south corner of their farms at the Pennsylvania Canal. After some unsuccessful efforts to adjust the dispute, the defendant erected a fence on his land for the entire line and a few feet from it. In making this fence he used what he called his part of the original fence, and its removal left a gap into Thompson's field at the turnpike. Thompson, or the plaintiff as

[Smith *v.* Johnson.]

his tenant, closed the gap by a fence along the turnpike and connected it with the fence made by the defendant on his land. The defendant took down the fence so made by plaintiff after it had been erected several times. Johnson alleged that by reason of the opening thus made, cattle, &c., got into his field and injured his crops. The damages claimed were for the removal and appropriation of the original line fence, the injury to the field, crops, &c.

The cause came on for trial December 5th 1873, before Junkin, P. J.

The plaintiff testified that he occupied Thompson's farm by a written lease for three years ending in the spring of 1874 ; he testified also that the defendant had removed the fence, &c. ; that by the removal of the fence he left a gap through which cattle went into the farm occupied by the plaintiff; the gap made was about three panels of fence ; plaintiff then " put in two posts and built a fence on Thompson's land and alongside the fence built by Smith, until the two fences got so close and parallel, and then I stuck in poles to close up, so that whilst the poles came to the line, they did not go over it, and thus the cattle were prevented from getting in. * * * After I had built it up, a panel and a half were taken away ; one sawed in two ; about ten days after this the other half-panel disappeared. I built it up again, and the rails were taken away again in about one week. Then I made sixty-five new rails, and built a fence along the line, but on Thompson's land seven panels, and that was thrown down. I built it up again ; it was thrown down again ; * * * in this way he threw it down five or six times." Plaintiff testified that he had sustained a loss of $500 by cattle getting into his field.

Levi Myers testified : " I live on David Smith's farm ; I have lived there since 6th March ; I threw down this fence four times ; Mr. D. Smith told me whenever they should build on him to throw down the fence ; the old line he showed me, and told me whenever they built across that line I should take it away ; I took this fence away three times ; Smith told me not to cross the line ; I pushed the rails over ; I touched no rails on Thompson's land at any time ; Smith lives three miles from this fence ; I think the points extended over about two feet, or may be more ; when shoved over it left a gap that a cow could go through."

Thompson, the landlord, testified that after disputes and negotiations about the fence, he and the defendant had agreed upon what part of the line fence each should make, and they set in a stone to fix the point of division. There was evidence for the plaintiff by Dunn and others that there had been an agreement between Thompson and defendant fixing what part of the fence each was to make ; also that the original fence had been some feet over on Thompson's land, with other evidence in support of his case.

The defendant gave evidence that the fence built by him was

[Smith, v. Johnson.]

entirely on his own land, and that the fence put up by plaintiff to close the gap connected with his and was on his land.

The defendant testified that in 1864 he moved to this farm, and was told by Thompson that defendant's portion of the fence to make was from the canal to some distance above the turnpike; that he had made and repaired that part. After plaintiff came to Thompson's farm, he refused to repair the other part of the fence, and in consequence cattle, &c., got into plaintiff's fields; defendant then took half of all the line fence which he had built, because he thought he had the right to do so. He then built the fence from the canal up to the turnpike on his own land and set it all on his own side; this left a gap at the turnpike. The gap was closed, and the plaintiff requested defendant to let it remain till he got his crops in. Defendant did not disturb it till plaintiff got his crop away, and then he notified plaintiff that he wanted all his ground. "In the first place, what was on my ground I threw down; was very careful to lay nothing on their ground; would take a panel down; he would build it up. He cut poles thirty feet long and I sawed them off; told Myers he should not go over the line, but only on our own land. Never threw that post fence down; left that stand. Where I sawed it down, a gap of four feet was left. I upset the fence that was on me; never threw anything down on Thompson's land; sawed down on my land."

Levi Myers testified for defendant: "Smith asked me to go to Johnson's. Johnson asked if the fence might remain until the crop was out. Smith told him that he would let the fence stay until his crop was off."

The court charged:—

"We take the law to be this: that under Act of 11th March 1842, sect. 3, the improvers of adjacent lands may join in a division or line fence, and when either fails in his duty in keeping it in repair, the township auditors are made ex-officio viewers, &c. Notwithstanding this act, however, a man was not compelled to join in such fence, for if he chose he might build his own fence entirely within his own land, and the adjoiner cannot cross over, and connect therewith; and after adjoiners have thus united in the erection of a common division line fence, still if it afterwards be destroyed by flood, fire or decay, either party may recede within his own lines and build for himself. It would result from this, that whether, or not, when a common division line fence has been once established, and still exists, it is in the power of either party to build a new fence within his own lines—it is very certain that he cannot remove the existing fence, and place it within his own lines, without being guilty of a trespass, because he does not own it, except in common with his neighbor. In case of its destruction, each is permitted to do, what either could have done at the beginning, to wit, build his own fence upon his own land; but he

26 P. F. SMITH—13

[Smith *v.* Johnson.]

must build with his own materials, and cannot use any part of the line fence. However, it is beyond all peradventure, that where such adjoining owners themselves agree to divide the line fence between them for repairs, each taking a section thereof, the removal of any part thereof by one of them upon his own ground, would be a trespass upon the land of the other.

"Now, applying these principles to this case, if you find this was a line fence, and it is admitted to have been such for more than forty years, then Smith could not remove it back upon his own ground; he could not have done so, even in the absence of any agreement between him and Thompson, by which Smith was to keep that part in repair from pike to river; and Thompson from pike round to corner on the ridge. But, if you find such an agreement was made between them in 1864, as proved by Thompson and Dunn, by which the repairs were so divided, still less could Smith remove this fence. So that in either aspect of the case, Smith committed a trespass when he did so, and set it back from the line upon his own ground. In no aspect did more than half this fence belong to Smith, and this, too, an undivided half, so that every rail that Smith removed belonged to the extent of one-half thereof to Thompson, and their removal was an undoubted trespass.

"Johnson, the plaintiff, is the tenant of Thompson, the owner of the farm, and in possession; is the proper party to sue, and recover the damages; he can settle with his landlord for his interest.

"Then, as this removal of the fence by Mr. Smith was unlawful, he is liable for all the damage which naturally flowed from his wrongful act, to the plaintiff (Johnson) who was in possession of the adjoining farm belonging to Mr. Thompson. These damages embrace the injury from the loss of the fence, thus transferred from the common ownership of both the adjoining owners, to Smith alone; also the injury to the crop of Johnson by the trespass of cattle, coming in through the gap, which the removal of this fence opened between the two farms, along the pike; in short, for all the direct and expected consequences arising from the wrongful act. True it is, however, that Smith is not liable for any damage or injury resulting from negligence on the part of Johnson in neglecting to repair the fence so as to close up the gap as soon as could reasonably be done—that is, if Johnson, after discovering that his fields of wheat and corn, or whatever else, were thereby exposed to the range of stock coming in, and trespassing, neglected to repair, or close it up, Smith should not be made to pay for such negligence. [But should you find that, as often as Johnson did repair, Smith again destroyed it, and thus between these times stock got upon his crops, then Smith is clearly liable to pay for such injury.] Again, the law in cases of this kind adopts as the measure of damages, compensation quite equal to

the injury, loss and trouble sustained; but this rule yields to circumstances, so that, in cases of wanton, malicious and aggravated trespasses, attended with acts showing an intention to do great injury, and permits exemplary or punitive damages to be given; that is such damages as punish the trespasser by making him pay more than the mere sum, which makes good the injury to the suffering party. [The original act of Mr. Smith, in removing this line fence, in itself, if done under a misapprehension of his duty, believing he had the right to do so, does not indicate a malicious purpose; but his subsequent conduct in removing, or causing to be removed, all the means taken by Johnson to preserve his crop, such as cutting off or throwing down the rails which very harmlessly pointed, if at all, but slightly, over the line, is difficult to explain, and inclines the mind strongly to the belief, that his motives were not commendable. All these things you must take into consideration, and assess such damages, as under all the circumstances you feel and believe to be just and proper under the evidence.]

"Defendant's counsel asks us to instruct you that, if this fence was only a division fence by agreement of Thompson and Smith, by each agreeing to keep a specific part in repair, and it is found, as a matter of fact, that Thompson had neglected his part to such an extent that repairs.became necessary, that then Smith could remove the fence within his own lines without being liable as a trespasser. But the facts show that the removed fence was not a partition fence by agreement between Smith and Thompson; it had always been the line fence between the two farms, and the utmost extent of the agreement proved by Thompson and Dunn was to fix each one's part to be kept up, [so that after all the question is simply one of damages.] How much shall the plaintiff recover for the injury he has sustained, as already explained. Besides, in cases of partition fences, the whole matter is regulated by the Act of 11th March 1842, which provides the manner of compelling each to do his duty, or paying the one who does the whole, so that in no aspect can this trespass be justified."

The verdict was for the plaintiff for $420.

The defendant took a writ of error. He assigned the following errors :—

1, 3, 4. The portions of the charge in brackets.

2. "The court misled the jury by reviewing and emphasizing the evidence of plaintiff as stated in the first specification of error, on the subject of malice, and failing to notice in any way the facts in evidence which disproved malice on the part of the defendant, as follows: That Johnson asked Smith to permit the gap to remain closed until he gathered his crop, and that Smith did as requested."

[Smith *v.* Johnson.]

*E. D. Parker*, for plaintiff in error.—The general rule to measure damages in tort is compensation: Seely *v.* Alden, 11 P. F. Smith 302. A man may abandon an old partition fence and build a new one on his own land: Painter *v.* Reece, 2 Barr 126; Rohrer *v.* Rohrer, 6 Harris 368. If the court charge so as to review those facts only which tend to establish one side of a case, it is calculated to mislead a jury and is error: Parker *v.* Donaldson, 6 W. & S. 132; Pennsylvania Railroad Co. *v.* Berry, 18 P. F. Smith 272.

*E. S. Doty*, for defendant in error.

Mr. Justice MERCUR delivered the opinion of the court, July 2d 1874.

Unless the plaintiff in error occupied lands up to the line of the adjacent owner, he was under no legal obligation to put his fence on the line: Painter *v.* Reece, 2 Barr 126; Dysart *v.* Leeds, Id. 488; Potts *v.* Everhart, 2 Casey 493. He had a right to set his fence on his own land, and throw open to the public the portion lying between the line and his fence: Painter *v.* Reese, *supra;* Rohrer *v.* Rohrer, 6 Harris 367. By so doing he was relieved from a continuing obligation to assist in the maintenance of a fence on the line. If the boundary fence had previously been built at the joint expense of the adjoining owners, it gave the plaintiff in error no right to remove any portion of it, on his withdrawing from an occupancy of the land, up to it. The fence had not only become common property, but was such a dedication of the materials composing it to the realty that he could not remove the portion made by himself without the consent of the other, and for such removal he would be liable in trespass: Stoner *v.* Hunsicker, 11 Wright 513.

The court then committed no error in denying the right of the plaintiff in error to remove a portion of the line fence. He was liable for the damages which the defendant thereby necessarily sustained.

A duty, however, was imposed upon the defendant in error to protect his crops by the building of proper fences within a reasonable time. If he neglected this duty, he cannot hold the plaintiff in error liable for the damage done by the cattle of others: Gregg *v.* Gregg, 5 P. F. Smith 227.

In protecting his crops the defendant in error had no right to extend his fence over on the land of the plaintiff in error a few feet. By so doing he in turn became a trespasser: Dysart *v.* Leeds, *supra.* If he so extended it, the plaintiff in error had an undoubted right to throw down that portion of the fence and remove it from his land. This being a lawful act, no action would

[Smith *v.* Johnson.]

lie against him therefor, although his motive thereto may have been malicious: Jenkins *v.* Fowler, 12 Harris 308.

The court appears not to have discriminated between the act of the plaintiff in error in removing the line fence and his removal of the other fence subsequently built by the defendant in error. The learned judge appears to have ignored the testimony of both Levi Myers and of the plaintiff in error. They both testify that no portion of the fence built by the defendant in error was removed, except that which extended over on the land of the plaintiff in error. If the jury should find such to be the fact, there could be no recovery therefor. This must not be confounded with a case where the fence is on the very line, and the rails of the one extend a few inches beyond the line fence. Hence it was error for the court to take this from the jury and say to them, "after all, the question is simply one of damages." As to one branch of the case, there was clearly a question of the right to recover.

In the absence of specific instructions having been asked for, we cannot say there is error in the second assignment; but, as we have shown, the first, third and fourth are sustained.

As we have not been furnished with a copy of the lease, we are unable to determine what property the defendant in error had in the rails composing the fence, or in the growing crops, and therefore give no opinion on the right of the defendant in error to recover for the whole property taken or destroyed.

Judgment reversed, and a *venire facias de novo* awarded.