## Wilson *versus* Berg et al.

1. The fraud which will avoid a preference or general assignment for the benefit of creditors, must be fraud or preference in the assignment itself.

2. If prior to the assignment, the assignor had fraudulently conveyed or concealed any of his property, such acts would not impair the validity of an assignment subsequently made. If the conveyed or concealed property can be recovered by the assignee it should be for the benefit of creditors. If he cannot recover it, then any creditor may pursue it as if the general assignment had not been made.

3. Prior to an assignment, except as against a bankrupt law, a debtor has a right to prefer any creditor.

4. An assignment for the benefit of creditors can be impeached only for fraud in the assignment or at the time of making it, so as to have attached to the instrument or affected its operation.

5. An assignment may be void, although all the forms of law may be complied with.

November 19th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas of *Butler county:* Of October and November Term 1876, No. 267.

David Kelly, on December 7th 1875, sold a farm to David Henry for $13,000, taking in payment therefor a credit of $2000, due by Kelly to Henry, and a judgment on a mortgage, given by one Guffy to one Fry, the son-in-law of Henry, for $11,000, which judgment was assigned to Alexander Mitchell. On December 13th and 14th 1875, and subsequently, judgments to the amount of $50,000 were entered against Kelly. Berg & Co., who held a judgment against Kelly, treated the assignment as void, and as made in fraud of creditors, and levied upon Kelly's personal property. Wilson, the assignee, petitioned the court to set aside the writs, and Berg & Co. alleging that the assignment was void and conferred no title on Wilson, an issue was directed to try the question of title. On the trial it appeared that the farm sold constituted the greater part of Kelly's assets; that no consideration passed from Mitchell to

[Wilson *v.* Berg.].

Kelly; that Mitchell, who was the cashier of the First National Bank of Butler, subsequently made a declaration of trust in favor of said bank, to which Kelly was indebted. It did not appear that Mitchell was present when the assignment was made, nor was there any evidence to show that the declaration of trust was made in pursuance of any previous agreement.

The following points were submitted by defendants, to which are subjoined the answers of the court:

1. That an assignment for the benefit of creditors is not embraced within the acts which are forbidden if done to hinder, delay or defraud creditors.

Ans. "Refused." First assignment of error.

2. That no act of David Kelly done before the execution of the deed of assignment, or judgments confessed, can render void the assignment subsequently made for the benefit of his creditors.

Ans. "All his acts immediately before or within a short time before the assignment was made, may be taken into consideration by the jury if they throw any light upon the question as to the motive in making the assignment. He may have prepared himself, hoping to conceal a portion of his estate. If the jury come to the conclusion that was done in this case fraudulently, then the assignment would be fraudulent, and intended to hinder, delay and defraud creditors in the collection of their judgments. With this view of it, already stated in our general charge, we negative that point also." Second assignment.

4. That the assignment of the Fry mortgages by Kelly, and other acts done by him before the assignment, cannot affect the assignment and render it void.

Ans. "We refuse to so instruct you. We have instructed you to the contrary; acts which precede the assignment may be taken into consideration if they throw any light upon his motives in making the assignment." Fourth assignment.

6. That the deed of assignment to Allen Wilson is in proper form, and on its face appears to have been signed, executed, acknowledged and recorded within thirty days after its execution, and is, therefore, a formal lawful deed of assignment.

Ans. "This point may be affirmed as a proposition of law, but it is not applicable to this case. The formality and the execution of the assignment are not called in question. That the assignment made is formal, duly executed, acknowledged and recorded within the proper time may be admitted. That is not the question in the case. This point is not applicable to the case. The formality of the execution of the assignment is not called in question; it is the motive that prompted the act, whether it was done with intent that was good or intent that was not good." Fifth assignment.

7. That if Allen Wilson accepted the duties and trusts imposed by the deed and the laws, gave bonds, filed an inventory and

[Wilson *v.* Berg.]

accepted the trust, the deed of assignment is valid, and the verdict of the jury should be for the defendant.

Ans. "We refuse to so instruct you. We state again that the formality of the deed of assignment and the regular proceedings of the assignee are not questions coming before the jury at all, because they throw no light upon the questions or inquiry here. While it may be all true that the assignee is going on and discharging his duty under the deed of assignment legally; that still does not answer the question whether or not the assignment made by David Kelly was made with a fraudulent intent by him to hinder, delay and defraud his creditors or not." Sixth assignment.

9. That a debtor has the right in law to prefer a creditor, and the assignment of the Fry mortgage to Alexander Mitchell, cashier of the First National Bank of Butler, for the use of the bank, a bona fide creditor to the extent of the assignment was neither fraud or evidence of fraud, but a lawful act which Kelly had the right to do.

Ans. "We answer that as we have in our general charge that the mere act of making an assignment of the mortgage might not in itself be an act of fraud. This point is not applicable to this case. The inquiry here is whether there was a fraudulent intent on part of David Kelly. The mere question whether he had a right to assign and transfer property for the benefit of a special creditor does not come up in the case. It is not applicable to an assignment to Alexander Mitchell, because he was not a creditor, therefore this point is not applicable to this case. The point is refused as not applicable to the case on trial." Eighth assignment.

10. That a deed of assignment for the benefit of creditors is not foeffment, grant, alienation, bargain or conveyance of lands, tenements, hereditaments, goods, chattels or lease, rent common or other profits of the same, nor a bond, suit, judgment execution, or any act or thing forbidden as intended to delay, hinder or defraud creditors, and the verdict must be for the defendant.

Ans. "We would make the same remark with regard to this point, as not applicable to the case on trial, consequently we refuse so to instruct you." Ninth assignment.

The fourteenth assignment of error was the following portion of the general charge :—

"It appears in evidence that on the 7th of December, just one week before the assignment was made (the assignment was made on the 14th of December 1875, just one week before it is in proof), Kelly made a sale; at that time no judgments had been entered against him; he sold the most important and valuable of his possessions, a farm or tract of land, for the sum of $14,000. There were no judgments on the docket, as his creditors had confidence in him. It appears that in a very few days afterwards judgments were entered against him, which would indicate that judgment-notes were out at that time, or at least debts for which judgments were

[Wilson *v.* Berg.]

afterwards entered to the amount of nearly $50,000.   When, in a very few days after, he made a sale of this valuable property or tract for $14,000 or thereabouts, judgments were entered.''

The plaintiff offered in evidence, inter alia, the record of an entry of judgment against Kelly to January Term 1876, to which the defendant objected, on the ground that it was not all offered, but only a portion thereof.   The court admitted the evidence, which was the twentieth assignment of error.

A number of assignments of error were made to the charge, the tenor of the instructions of which was that which pervades the answers to the foregoing points.

The verdict was for plaintiff and defendant took this writ, among his assignments of error being those above noted.

*McCandless & Greer,* for plaintiff in error.—A general assign- · ment of all the property owned by an insolvent debtor for the benefit of creditors, is not embraced in the acts which are forbidden, if done to hinder, delay and defraud creditors.   The voluntary assignment of property to hinder, delay and defraud creditors prohibited by law, is an assignment of the whole or a part of an insolvent's property to a particular person, in order to prevent his creditors from having execution of it, and not a general assignment of all his property for the benefit of all his creditors.

The evidence in the case shows that the only acts done by David Kelly, before the general assignment was made to Allen Wilson, was giving of judgment-notes to all his creditors, or nearly so, and the assignment of the Fry judgment and mortgage to Alexander Mitchell for the bank, all of which were lawful and proper acts, and done some time before the general assignment—on the 14th of December 1875.   Therefore the second and fourth points of plaintiffs in error should have been answered in the affirmative.

It is wholly immaterial with what intent or design David Kelly made the general assignment of all his property to Allen Wilson, for the benefit of all his creditors.

In this case the deed of assignment is a general one of all Kelly's property, in the usual and lawful form, executed and delivered to the assignee, Allen Wilson, for the benefit of all his creditors.   The duties of the trust entered upon by the assignee—deed recorded, inventory filed, $300 set apart to Kelly under an order of court, and sale made of the personal property under the deed, the assignee cannot be affected by the intent of David Kelly in making the assignment.

The judgments of the First National Bank of Butler, offered in evidence by the plaintiff unassailed, show that the bank was a bona fide creditor of David Kelly to the whole amount of the judgment and mortgage assigned to Alexander Mitchell for these debts.   Kelly had the right to make this assignment of the mortgage, and the

[Wilson v. Berg.]

bank through Mitchell had the right to receive it; and the transaction was neither fraud nor evidence of fraud, and the ninth point should have been affirmed.

The assignment by Kelly of all his estate vested the title to the same in Wilson, the assignee, for the benefit of all his creditors; title thereby vested in all the creditors *pro rata* in the property assigned, and the *intent* with which Kelly made the assignment cannot defeat their title.

*Lewis Z. Mitchell*, for defendants in error.

Mr. Justice MERCUR delivered the opinion of the court, January 6th 1879.

This was an issue to try the validity of an assignment made by David Kelly to the plaintiff in error. The defendant alleged it was made fraudulently, with intent to hinder, delay and defraud the creditors of the assignor.

The assignment was general and for the benefit of all his creditors. It was regularly executed and acknowledged, and duly recorded on the same day. The entire good faith of the assignee is conceded. The effect is to impeach it by evidence of the acts and declarations of the assignor. His acts and declarations are, undoubtedly, evidence in so far as they prove he has unduly controlled or changed the legal effect of the assignment. Beyond that they are not evidence. The statutory intent, given to the assignment, is to pass to the assignee, all the property of every kind, which the assignor owned at the time of the assignment. A preference, on the face of the assignment, of any creditor, other than those preferred by Acts of Assembly, would be void. An agreement with the assignee, at the time of its execution, that any of the property, which, legally or equitably, ought to pass by the assignment, should be excluded from the inventory, and be left for the benefit of the assignor, would be fraudulent. This because the assignment itself would be contrary to the statute. If, prior to the assignment, the assignor had fraudulently conveyed or concealed any of his property, such acts would not impair the validity of a general assignment subsequently made. If the conveyed or concealed property can be recovered by the assignee, it should be for the benefit of creditors. If he cannot recover it, then any creditor may pursue it in like manner as if the general assignment had not been made. The subsequent assignment does not condone any previous misconduct of the assignor. The Act of 1836 permitted preferences in assignments. The Act of 1843 declared preferences void, except as to claims of laborers. It has, however, been held that the confession of a judgment to one creditor, just before making a general assignment, and with a view of preferring such creditor, did not defeat the prior lien which he thereby acquired to the prejudice of other creditors: Blakesley's Appeal, 7 Barr 449;

[Wilson *v.* Berg.]

Worman *v.* Wolfersberger's Executors, 7 Harris 59. Hence, although the intention of the debtor was to remove from the operation of the subsequent assignment, a portion of his estate and his conduct produced that result, yet the validity of the assignment is not thereby impaired. The preference was not in and by the instrument, through and by means of which the debtor surrendered to his creditors all dominion over his property: Id. No law compels a debtor to make an assignment for the benefit of his creditors. It permits him so to do, and directs as to its effect when done. Prior to such action, except as against a bankrupt law, he has an undoubted right to prefer any of his creditors, by a conveyance or transfer of property or by a confession of judgment, although he may thereby hinder or for ever prevent his other creditors from collecting their just demands. In case of a general assignment, the law contemplates that the assignor shall pass over all his estate of every kind which he then owns. When that is done the assignment is in accordance with law, and the effect given to it by law, cannot be in fraud of any of his creditors. Although the claims of some of his creditors may be ripe for execution, and the debtor have property out of which they might be collected; yet an assignment by which they will receive only a *pro rata* share with other claims, not even due, works no legal fraud. The fraud that is forbidden arises from acts done contrary to law or equity. It may result from a disregard of proper forms, or, if they be observed, from doing the acts with the intention of reaching a result not sanctioned by the authorities. As the law implies no fraud in a debtor transferring property to one creditor, to the exclusion of his other creditors, before an assignment, and with a view of making it, so no inference of fraud, in the assignment, can arise from a transfer at any time, of all the property he then has, for the benefit of all his creditors. The policy of the law regulating assignments is that the property of an insolvent debtor shall be divided among all his creditors, rather than pay some in full, and others nothing. So effectual is an assignment for the benefit of creditors that if it be placed by the assignor or any one interested, in the office of the recorder of deeds of the proper county, within the prescribed time, it takes full effect, although the assignee is ignorant of it or refuses to accept the trust: Marks's Appeal, 4 Norris 231.

If an assignment be made in the form and manner provided by law, and duly recorded, so as to pass all the property of the assignor, we cannot see how the motive existing in his mind can affect its validity. If in morals the motive be a bad one, yet in law, it produces no forbidden result. In so far as it hinders or delays creditors, it is a lawful hindrance and delay, and cannot be held fraudulent. The commission of a lawful act is not made unlawful by the fact that it proceeded from a malicious motive: Jenkins *v.* Fowler, 12 Harris 308; s. c: 4 Casey 176; Glendon Iron Co. *v.* Uhler, 25 P. F. Smith 467; Smith *v.* Johnson, 26 Id. 191.

[Wilson v. Berg.]

The conduct of the assignor which the learned judge appears to have thought the strongest evidence of fraud was a separate and distinct transaction occurring one week before the assignment was executed. It was the sale of a valuable tract of land to persons to whom he was indebted in a sum much less than he received for the land. There was also some evidence tending to prove his fraudulent concealment of the residue of the purchase-money. We think, however, that an assignment for the benefit of creditors can be impeached only for fraud in the assignment, or at the time of making it, so as to have attached to the instrument or affected its operation. An erroneous view of the bearing of this transaction on the validity of the assignment pervades the whole charge and controlled all the rulings of the court.

As an assignment may be fraudulent, although all the forms of law are complied with, the first, sixth and ninth assignments are not sustained. Nor do we discover any error in the recital of the evidence covered by the fourteenth assignment.

The general rule is that when part of a record is given in evidence, the whole shall be received, yet the rule is not so inflexible as to apply in all cases. It was stated by the judge, and not contradicted by the evidence, that the declaration of trust by Mitchell, although on the docket, was executed long after the assignment of the judgment to him. As he is not shown to have been present when that assignment was executed, and the declaration of trust is without date, and is not shown to have been executed in pursuance of a previous agreement, we cannot say there was error in its rejection. It appears that all other parts of the record were afterwards given in evidence. The twentieth assignment is not sustained. All the remaining assignments partake of one common error, and in so far as the alleged errors are in conflict with this opinion the assignments are sustained.

Judgment reversed, and a *venire facias de novo* awarded.

Chief Justice AGNEW dissented.