# Becker, Appellant, v. Lebanon & Myerstown Street Railway Company.

*Practice, C. P.—Pleading—Plea in abatement—Trespass—Act of May 25, 1887, P. L. 271.*

There is nothing in the Act of May 25, 1887, P. L. 271, which prevents the filing in an action of trespass of a plea in abatement setting forth the pendency of a former suit in the same jurisdiction between the same parties, and for the same cause of action.

*Street railways—Trespass—Nuisance—Actions.*

Where a street railway wilfully and maliciously lays its tracks upon a highway against the warning and protest of an abutting landowner, in such a way as to injure the owner's land and buildings, the street railway company is not in a position to demand that damages for the injurious acts shall be assessed upon the same basis as if they were done in the lawful exercise of the right of eminent domain.

In such a case the owner, after having brought an action of trespass to recover damages for the injuries resulting from the construction and operation of the road to a certain date, may subsequently bring another action for the continuance from the date of the former action of the unlawful acts, and for the additional injury of interference with his drainage since the date of the prior suit.

Argued Oct. 28, 1902. Reargued Oct. 26, 1903. Appeal, No. 57, Oct. T., 1902, by plaintiff, from judgment of C. P. Lebanon Co., Sept. T., 1900, No. 150, for defendant on plea in abatement in case of John Adam Becker v. Lebanon & Myerstown Street Railway Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Trespass for injuries resulting from the construction of a street railway on a highway.

The facts appear by the opinion of the Superior Court.

*Errors assigned* among others were in entering judgment in favor of defendant on plea in abatement.

*Bassler Boyer*, for appellant.—In the ordinary actions between private persons to recover damages for trespass upon the land of the plaintiff, the injury is a wrong which is to be compensated by allowing the actual damage sustained by the plaintiff up to the time suit is brought: McGettigan v. Potts, 149 Pa. 155.

The plaintiff may waive his right to proceed under the common law, and adopt the statutory remedy, or measure, as was done by the plaintiff in Thompson and Wife v. Citizens' Traction Company, 181 Pa. 131, but he cannot be compelled to do so; as, if without the statutory right to do the act, the defendant is not entitled to the privilege of demanding the statutory remedy and measure; it is an ordinary law-breaker, and must answer for the harm it has done, as in other cases: Becker v. Lebanon, etc., Street Ry. Co., 195 Pa. 502; Chestnut Hill & Spring House Turnpike Co. v. Piper, 77 Pa. 432.

This plaintiff could not and cannot be compelled to anticipate, with prophetic mind, his future damages, because the law presumes that the defendant will remove or remedy the evil; and the defendant must so construct and operate its railway that it will not cause injury to the plaintiff outside of the limits of its location, nor interference with his proper use of his land in the highway at the place of its location: Uline v. N. Y. C. & H. R. R. Co., 101 N. Y. 98 (4 N. E. Repr. 536).

*C. H. Killinger*, with him *S. P. Light*, for appellee.—From the statement filed and the undisputed facts it is clear that the plaintiff's cause of action was complete when the first suit was brought, August 23, 1900 : Becker v. Lebanon, etc., Street Ry. Co., 188 Pa. 484; Pa. S. V. R. R. Co. v. Walsh, 124 Pa. 544; Wadhams v. Lack. & B. R. R. Co., 42 Pa. 303; Comstock v. Ry. Co., 169 Pa. 582; O'Brien v. Pa. S. V. R. R. Co., 119 Pa. 184; Thompson v. Traction Co., 181 Pa. 131; Pittsburg Junc. R. R. v. McCutcheon, 18 W. N. C. 527; Hankey v. Phila., 5 Pa. Superior Ct. 148; Rudolph v. Pa. R. R. Co., 186 Pa. 541;

Pittsburg, etc., R. R. Co. v. Com., 101 Pa. 192 ; Neal v. P. & C. R. R. Co., 2 Grant, 137 ; Beale v. Pa. R. R. Co., 86 Pa. 509 ; Pittsburg, etc., Ry. Co. v. McCloskey, 110 Pa. 436.

The construction and operation of the railway must be treated as a permanent injury : Troy v. Cheshire R. R. Co., 23 N. H. 83 ; Ridley v. Seaboard R. R. Co., 118 N. C. 996 (24 S. E. Repr. 730) ; Porter v. Ry. Co., 125 Ind. 476 (25 N. E. Repr. 556) ; Thompson v. Traction Co., 181 Pa. 131; Bare v. Hoffman, 79 Pa. 71 ; Eshleman v. Martic Twp., 152 Pa. 68; Chestnut Hill, etc., Turnpike Co. v. Piper, 77 Pa. 432.

OPINION BY RICE, P. J., July 28, 1904 :

The plaintiff brought an action of trespass against defendant and filed a statement to which the defendant pleaded not guilty.  Later he brought a second action and filed a statement to which the defendant pleaded in abatement the pendency of the former action averring that it was "for and upon the same cause of action, wrong and injury in the said statement or declaration in this present suit mentioned," and praying " judgment of the said writ and statement in this suit and the same may be quashed," etc.  To this the plaintiff filed a special replication, which was to the effect that the causes of action were not identical and concluded with the prayer that this " may be inquired of by the country," etc.  Upon defendant's motion the court made an order striking the replication from the record and giving plaintiff leave to demur or file the plea nul tiel record within fifteen days.  Within the time named the plaintiff filed a motion to strike off the plea assigning as the reason therefor that under the act of 1887 the filing of a plea in abatement is not allowable, and on the same day, under protest, filed the replication nul tiel record to the plea. After hearing the court entered judgment for the defendant on the plea in abatement and thereupon the plaintiff took this appeal.

Prior to the act of 1887, a defendant was permitted to plead in abatement the pendency of a former action for the same cause where a complete remedy could be secured by one. And as a general rule it was pleadable only in abatement and material only when thus pleaded.  It was a privilege which was waived by pleading to the action.  " There is no hardship

in requiring one who would avail himself of a personal privilege, which neither denies the existence of a rightful claim against him, nor asserts his discharge from it, to use his privilege at the earliest moment, and to use it in the mode in which the law has accorded it to him," per STRONG, J., in Commonwealth v. Cope, 45 Pa. 161. No one pretends that the law which protected a party against being doubly vexed by two proceedings for the same cause carried on against him at the same time was abrogated or changed by the act of 1887. "If a party may carry on two suits against his adversary, he may carry on twenty just as well, provided he can find, as in some cases he might find, that number of courts having jurisdiction, and thus he could not only harass and vex him, but plague him to death:" per BLACK, J., in Cleveland, Painesville, etc., R. R. Co. v. City of Erie, 27 Pa. 380. This was not permissible prior to 1887 and is not now. We see no reason to doubt that his right to raise the objection and his duty to raise it promptly if he intends to raise it at all remain unaffected by the act. This conclusion has support in decisions under the act of 1807 relative to ejectment, and especially in Findlay v. Keim, 62 Pa. 112, where AGNEW, J., said: "There being no plea in abatement in ejectment, the plea of not guilty being the only plea under the statute, it was the duty of the defendant to have applied to the court to stay proceedings or compel the plaintiffs to elect under which action they would proceed, and to discontinue, if necessary, and pay the costs of the one they abandoned. But the pendency of the action of covenant could be used only in abatement, and it was too late after going to trial on the merits, for the defendant to use it in bar of the plaintiff's right to recover. Had there been a final recovery in the action of covenant, the case would have been different, it then being a bar to a future action." If upon the facts alleged in the sworn plea filed in the present case the defendant was entitled to similar relief, the court was not bound to strike it from the record but was justified in looking at the substance of what was alleged and making such order as that required, even though the paper was given an objectionable name. Moreover there are several common pleas decisions and at least two Supreme Court decisions rendered since the adoption of the act of 1887 in which the propriety of pleading in abate-

ment such matter as this is distinctly recognized : Fitzpatrick v. Riley, 163 Pa. 65; Gardner v. Kiehl, 182 Pa. 194. In the last cited case two grounds were set up for quashing the writ in trespass, the first of which was that plaintiffs had suit pending in another county for the same cause of action. The present chief justice, who rendered the opinion of the Supreme Court reversing the order quashing the writ, said : " As to the first ground the judgment must be reversed for irregularity. The pendency of a prior action is the subject of plea in abatement, not of a motion to quash the writ." See also Smith v. People's Mutual Live Stock Insurance Co., 173 Pa. 15 ; Frisbie v. Mc-Farlane, 196 Pa. 110, and opinion of Judge SULZBERGER in Dickerson v. Central Railroad Co. of New Jersey, 7 Pa. Dist. Rep. 104. In any view that may be taken of the paper the court committed no error in refusing to strike it from the record although it was drawn in the form of a plea.

The authorities show that although a former suit is pending when the plea in abatement is put in yet the plaintiff may after that discontinue it and reply that there is no such suit pending : Toland v. Tichenor, 3 Rawle, 320 ; Findlay v. Keim, supra ; Gardner v. Kiehl, supra. If the plaintiff cannot make this reply and the plea is sufficient in form and substance the proper replication is nul tiel record as the learned judge below correctly held : Pittsburg & Connellsville R. R. Co. v. Mt. Pleasant, etc., R. R. Co., 76 Pa. 481. If such replication be filed and the record when produced does not support the plea, the judgment is properly for the plaintiff that the defendant answer over. The truth of the plea is to be determined by an inspection of the records of the two actions ; facts which may have been alleged or proved in other reported cases between the same parties relating directly or indirectly to the same subject-matter cannot be considered. In general it is not sufficient to sustain a plea that the second action is brought in respect of the same land. " It must be for the same injury, and the same matters must be in issue that were in issue and might have been tried in the first action; otherwise the causes of action are not identical :" 1 Cyc. of Law & Proc. 30. Hence if the second is for the continuation of a trespass or nuisance alleged in the first the plea will not avail unless the plaintiff not only may recover but is bound to claim all his damages both

past and prospective in the first action.   Furthermore it must be presumed that the plaintiff can prove all he alleges with regard to the tortious acts complained of.   Applying these tests to the case in hand is it true that the record supports the plea ? The facts alleged in the first declaration stating them as briefly as is consistent with accuracy are as follows : The plaintiff is the owner of a tract of land lying between Lebanon and Myerstown having as one of its boundaries the center line of a turnpike belonging to an incorporated turnpike company.   In 1893 the defendant, a street railway company incorporated under the act of 1889, " without the consent of and against the protest of plaintiff, and without possessing the right or franchise to construct a street railway from Lebanon to Myerstown, and to do the act from which the injury to the plaintiff results . . . . wilfully and maliciously entered upon and constructed " and operated continuously since that time to the date of bringing the first action a street railway on and over the plaintiff's land included in the turnpike; thereby wrongfully taking, holding and using his land against his warning, protest and objection ; " and wrongfully obstructing and injuring the same by means of cuts, fills and the embedding and placing of ties, rails, poles and other street railway construction . . . . ; and by the maintenance and operation of a street railway, dangerous by reason of the nearness to the fence of the plaintiff along the southern edge of said turnpike road, and to his land thereby enclosed, and to the buildings thereon erected or hereafter erected ; and injuring, interfering with and destroying the lands of plaintiff, south, and outside of the limits of said turnpike road, and the buildings and improvements thereon, and the safe and convenient use of said land and improvements ; and interfering with, preventing and destroying safe and easy access to and from said turnpike road to the said land and the buildings thereon ; and interfering with the plaintiff's ownership, possession, use; right to, and enjoyment of his land contained in the said turnpike road (at the location thereof, whereon the street railway is constructed), subject to the easement of the turnpike company, for public travel only, over the surface ; and of the land adjacent thereto along the southern edge of said turnpike road."   In his declaration in the second action the plaintiff alleges a wilful and malicious continuation of

these unlawful acts specifying as an additional injury the interference with the drainage from his land and claims damages that accrued between the dates of the bringing of the two actions.

Looking alone at the pleadings we have to deal with a case wherein it is alleged that a street railway was constructed, maintained and operated by the defendant in a highway, which inflicts an injury upon an abutting owner differing not only in degree but in kind from the injury done to other members of the general public, and, in addition to the injury to his adjacent land and the buildings thereon, imposes upon his land included within the limits of the highway an additional burden, and, still further, was erected and is being maintained maliciously. There is a class of cases which hold that one's motive in exercising an absolute right is immaterial; in other words "it cannot make that wrong which in its own essence is lawful:" Jenkins v. Fowler, 24 Pa. 308; Fowler v. Jenkins, 28 Pa. 176; Glendon Iron Co. v. Uhler, 75 Pa. 467; Smith v. Johnson, 76 Pa. 191; Wilson v. Berg, 88 Pa. 167. It is unnecessary to determine whether this is an unvarying rule to which there are no exceptions or to enter upon a discussion of that question, for it is obvious that it has no application to a case where the act complained of is wrongful and without even color of right. Granting that motive generally becomes important only when the damages for a wrong are to be estimated yet as was said by Judge COOLEY "it then comes in as an element of mitigation or aggravation and is of the highest importance." See Cooley on Torts, 2d ed. pp. 832–836. Inadvertent or unintentional injuries or acts unaccompanied with malice draw after them only their direct and immediate consequences, and not those remote and speculative; while grossly negligent or malicious acts may be the subject of larger damages: Seely v. Alden, 61 Pa. 302. To hold that a corporation or a natural person acting without right or color of right and actuated by a malicious motive may demand that the damages for such wrongful and injurious acts as are complained of here shall be assessed upon the same basis as if they were done in the lawful exercise of the right of eminent domain would be contrary to sound principle and would be justified by no precedent to which our attention has been called. Certainly the case of Thompson

v. Citizen's Traction Co., 181 Pa. 131, which goes as far as any in that direction does not sustain the proposition. In that case the element of malice was lacking but the assessment of damages upon the theory that the injury was permanent was made at the instance of the person injured, not that of the wrongdoer. Furthermore this decision was based in part at least upon a consideration of a condition of affairs in the commonwealth which had arisen out of a misinterpretation of the street railway act of 1889 concerning which Mr. Justice WILLIAMS had said in a preceding case: "But we know as matter of current history that street railways have been projected, and actually constructed, and are now in operation, over country roads where no legal consent has been obtained, and where no attention has been paid to the rights of property holders. Such railways cannot now be torn up or enjoined either by the township officers or at the instance of landowners along their routes. Where such enterprises have been allowed to proceed and the expenditure of large sums of money has been permitted, it would be inequitable to correct at this time what was a mutual mistake under the influence of which these enterprises have been pushed to completion. . . . At present an action at law is the only remedy within the reach of an injured person who has suffered a railway to be built across his land without objection:" Penna. R. R. Co. v. Montgomery County Pass. Ry. Co., 167 Pa. 62. Granting that in such a case as that the defendant may insist on the application of the rule laid down in Thompson v. Citizens' Traction Company it is quite clear that a corporation that was not only without right or franchise to lay and operate a railway upon the highway in question but maliciously proceeded against the warning and protest of the abutting landowner and actuated by the same motive laid it in such manner as to inflict injury so long as it shall remain in that condition is not in a position to demand that the plaintiff shall—to quote the language of EARLE, J., in Uline v. New York Central, etc., R. R. Co., 101 N. Y. 98 (4 N. E. Repr. 536)—"anticipate his damages with prophetic ken and foresee them long before, it may be many years before, they actually occur, and recover them all in his first action." Especially is this true where it is not clearly and affirmatively shown that all the injuries to the plaintiff's land and the buildings thereon are necessarily inci-

dent to the proper and ordinary construction and operation of the street railway at this point. And independently of the element of malice, if there are injuries not of that nature, injurious conditions that may readily be corrected without abandonment of the railway, the plaintiff is not bound to act on the assumption that they will not be corrected but will be perpetuated for all time in disregard of his rights.

We do not say that the evidence developed on the trial may not be such as to warrant the application of the rule that was applied in the Thompson case. We will not express an opinion upon any other state of facts than that presented by the pleadings, for as Justice AGNEW said in Seely v. Alden, it is often difficult for the court to determine the true measure of damages until the evidence is in. " If there be different modes of measuring the damages, depending on the circumstances, the proper way is to hear the evidence, and to instruct the jury afterwards according to the nature of the case." Our conclusion is that the plea is not supported by the record.

The judgment is reversed; it is now ordered and adjudged that the defendant answer over; and the record is remitted with a procedendo.