Samuel B. Thompson and Martha J. Thompson, his wife, in right of said Martha J. Thompson, *v.* The Citizens Traction Company, Appellant.

| 181 | 131 |
|---|---|
| 25 SC | 374 |
| 181 | 131 |
| 212 | 586 |
| 181 | 131 |
| e213 | 256 |
| e213 | 259 |
| 29 SC | 175 |
| e 30 SC | 558 |
| f 30 SC | 559 |
| 181 | 131 |
| 216 | 202 |
| 181 | 131 |
| 34 SC | 444 |
| 181 | 131 |
| f222 | 1252 |
| 181 | 131 |
| 40SC 242 | |

*Street railways—Location of tracks on public road—Liability to abutting property owners—Measure of damages.*

Where a street railway company locates and constructs its railway on a public road without the consent of the abutting property owners, the measure of damages for which it is liable for injury done to their property by such location and construction is the depreciation in the value of the property, as the result of the change of grade and the construction and maintenance of the railway.

Argued Nov. 10, 1896. Appeal, No. 55, Oct. T., 1896, by defendant, from judgment of C. P. No. 1, Allegheny Co., Dec. Term, 1892, No. 450, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for injury to land caused by the construction of a street railway upon a public road. Before STOWE, P. J.

The court charged in part as follows:

The first question is, what was the damage done? And we will consider in this connection that the Supreme Court have said that notwithstanding the track goes there without the consent of the property holder—and I presume the same rule would apply to the borough authorities—if the property owner stood by and did not take advantage of his knowledge at the time, saw the company expending money in laying down tracks and building their road, he cannot then turn around without having taken steps at the right time, and compel the railway company to destroy their road and lose their investment. That being the case, this road is there in such a way that it cannot be removed. Neither the property owners nor the authorities of O'Hara township could compel this company to remove the road, and therefore it becomes a permanent fixture. For that reason I have held that the amount of damages the plaintiffs are entitled to recover is the substantial damage done by the construction of this road, which means, of course, the laying of it down upon the road and raising the road sufficient to put the track upon it. According to the engineer and another party who put it down, that was between eleven and twelve inches, say twelve inches. So far as the evidence of the other parties is concerned, that they thought it was two and a half or three feet, it is mere guess work. You might as well undertake to set up the evidence of a person who would undertake to guess the height of that window above the floor against somebody who measured by a foot rule or tape line. No two persons would guess within a foot of the exact height; but if it is measured in a proper way and by a proper instrument, that is the height and it cannot be anything else. So, upon this question the jury, it seems to me—of course it is a matter for you—ought to take (if these gentlemen are not discredited) their statement as to the amount of ground that was put upon this road. One of them said they dug down three inches for their subgrade to place their ties upon the road, and threw it up to such a height that it was just the same height as the rest—we will call it a foot, in round numbers—above the surface of the old road. [Assuming that to be correct, because you are the judges of this matter, the question is, how much damage did that do the plaintiffs? One way to get at the real question is to determine how much this

property will sell for, how much it is worth with this road there constructed as it was, less, if anything, than it was before the road was built. In arriving at that matter you have no right to take into consideration the general benefit of laying down this street railway. It is the actual benefit, if any, to this particular piece of property which is a matter for your consideration. The fact that they have a better road, if it would enhance the value of this property, is for your consideration; and also every other matter incident to the construction of this road as now constructed as compared with what was the condition and value of the property previous to its being put there. That brings you down simply to the question of how much the plaintiff has lost. We have got to calculate these things in dollars and cents. Somebody may put near my property a mill that I would not like to have there at all—perhaps I move away by reason of its being there. Yet if that mill will make my property sell for more than it would have sold for if it was not there I am not injured, in a legal point of view. I may be annoyed, I may be put in such position that possibly I would not care to live there; but that is not what we are to consider in cases of this kind.] [4] Cases in court are to be governed by the actual money loss, if any, and determined by the rules in relation to those matters.

There are two ways of getting at the loss. One is to restore this property to the condition it was in before, supposing there was an injury done—and apparently there would be if this road was raised—and it was convenient and proper to bring the ground up to the level of the road as it now stands, and it was about on that level before. [To bring it up to a level it would have to be filled in. That would involve expense to bring it up to its former condition. Apparently whatever that would cost would be the amount of damage done. And yet that amounts to nothing if, as the property stands and without that being done, it is worth more in the market than if the road had not been fixed as it is. Quite a number of witnesses in their judgment think the property is worth more with the road in the condition it is now than it would have been if the road had not been raised. Whatever their opinion is worth is for you to consider. Others think differently.] [5] When you come to assume as a starting point that the property has been damaged,

it is your duty to look at the claim put in by the plaintiffs that this road has not been of any benefit to the property at all.

In the first place, you start with the fact that the ground is a foot or more—a foot, if you take the engineer's estimate—above what the old grade was, and a foot brings you to the top of the rail. Of course, the road on either side ought not to be, and would not properly be any higher; but call it a foot. Then the plaintiff would be entitled to recover just as much as would be required to make this property as valuable as it was before. According to the testimony the foundation of the house—or the wood work, it being a frame house upon a stone wall—is a foot above the top of the rail. Now, could that property be filled in, starting at the porch, which would give sufficient grade and fall for the water to run towards the street, so as to be just as valuable as it was before? If so, that is all the plaintiffs are entitled to recover—all the expense incident to that.

The engineer referred to by counsel for defendant based his estimate of 1,600 yards of earth upon the assumption that this was to be raised two and a half feet, and that that is to be the basis in arriving at the damages sustained. That is not to be considered at all if you believe the property is worth more as it now stands than it would have been worth if the road had not been raised to put it in the condition it is in now. But assuming there is no benefit in that, assuming that the plaintiffs are to recover the actual damage sustained, how much is it? The jury have got to determine that matter. The property should be put practically, and in a pecuniary point of view, in the same relative position, so far as value is concerned, as it was before. Could that be done without raising this whole lot, the one hundred and fifty feet, two and a half feet or three feet? If it could, then the plaintiffs are entitled to recover simply what it would take to bring it back to the value that it had before the improvement was made and the work was done.

Now we come to the plaintiffs' testimony. Suppose the house had to be moved. Martha J. Thompson claims damages for an old boardwalk that floated away in 1891 and fell to pieces. She wants you to give her the value of a new boardwalk. That is not the standard of damages. The standard of damages in that case is just what it would take to put the old boardwalk back as it then was, if it floated out of the place and if the de-

fendant was responsible for that. When she comes to raise the house, if the house is to be raised, she is not entitled to a new house. The house is partially rotted. She said the sills were all rotted away. You cannot give her a new house for an old one. She would be entitled to whatever was absolutely necessary to raise the house. If she made any new additions to it the law does not give her new for the old. It simply gives her what it would take to raise the house as it stood. And so with the stable and everything else connected with it. So far as the plumbing is concerned, suppose the house was to be raised two feet, the plumbing is all in the house. Wherever connections are broken they would have to be connected, and whatever addition there would be she would be entitled to that. She is not entitled to have her house replumbed.

[We come back to just where we started; is this property worth as much since this work has been done? If it is, then the plaintiffs are entitled to recover only nominal damages, six cents. Mrs. Thompson's legal rights have been trespassed upon, but she has suffered no actual injury. And she is entitled to only nominal damages. If the property is worth less than it was before, and would sell for less, then the difference she is entitled to in her verdict. You will get at that either one way or another. As I have suggested, the whole thing comes back to this one question, Is this property in value worth more or less than it would have been if this work had not been done? If worth more, she is entitled to at least nominal damages. If less, she is entitled to the difference between what it is worth now and what it would have been worth if the work had not been done.] [6]

Verdict and judgment for plaintiffs for $1,200. Defendant appealed.

*Errors assigned* were (4–7) above instructions, quoting them.

*Wm. D. Evans,* with him *Geo. C. Wilson,* for appellant.—The measure of damages under the pleadings was, we submit, not the difference between the value of plaintiffs' lot of ground before the fill was made, and after the fill was made, but the actual damage sustained by the plaintiffs up to the time of suit brought by reason of the matters complained of: Lentz v. Car-

negie, 145 Pa. 612; McGettigan v. Potts, 149 Pa. 155; Eshleman v. Martic Twp., 152 Pa. 68.

*S. B. Schoyer,* with him *S. Schoyer, Jr.* and *J. M. Cook,* for appellees.—The measure of damages in such cases is the difference in the market value of the property, including the buildings thereon, before and after the change of grade, as affected thereby, taking into consideration the advantage thereof, if any, peculiar to the property in question, and this measure of damages is not confined to a taking under the right of eminent domain, but is equally applicable to a case where property is "injured or destroyed by a municipal or other corporation in the construction or enlargement of their works, highways or improvements," under the provisions of article 16, sec. 8 of the constitution of 1874: O'Brien v. Phila., 150 Pa. 589; Hobson v. Phila., 150 Pa. 595; Penna. R. Co. v. Montgomery Co. Pass. Ry., 167 Pa. 62; Weir v. Plymouth Borough, 148 Pa. 566; Vanderslice v. Phila., 103 Pa. 103; Com. v. Johnson, 133 Pa. 293; Chambers v. South Chester Boro., 140 Pa. 510; Groff v. Phila., 150 Pa. 594.

OPINION BY MR. JUSTICE MCCOLLUM, May 3, 1897:

The right of the plaintiffs to compensation for the injury done to their property by the change of grade of the highway in front of it and the construction thereon of the railway is not disputed. The defendant however contends that the court adopted a wrong method of ascertaining the compensation they were entitled to receive for the injury thus inflicted. All the specifications of error relate to this contention, and the cases cited as sustaining it are Lentz v. Carnegie, 145 Pa. 612; McGettigan v. Potts, 149 Pa. 155, and Eshleman v. Martic Township, 152 Pa. 68. The rulings and instructions complained of were to the effect that the depreciation in the value of the property as the result of the change of grade and the construction and maintenance of the railway furnished the measure of compensation. Why the defendant in the light afforded by the testimony in the case complains of this measure is not apparent. The uncontradicted evidence on the part of the plaintiffs was to the effect that the cost of raising the lot and buildings to the level of the railway would exceed the depreciation in the value of the property.

Besides, the manner in which the case was tried makes the judgment in it a bar to any future action by them for damages arising from the location of the railway.

The plaintiffs were justified in regarding the railway as a permanent structure, an additional and continuing servitude on their land within the highway. They could not compel a change of grade or location, nor remove the embankment which interfered with access to their lot and was necessary to the support and operation of the railway. Their only remedy was an action to obtain compensation for the injury inflicted: Penna. R. Co. v. Montgomery Co. Pass. Ry., 167 Pa. 62. No good reason appears for holding that the rulings and instructions in regard to the measure of compensation were erroneous. The mere fact that the defendant was not invested with the power or right of eminent domain is not a sufficient warrant for condemning them. It is true that they were in accord with the settled rule for the ascertainment of compensation in a case where a corporation invested with the privilege of taking private property for public use has in the construction or enlargement of its works, taken, injured, or destroyed the property of another. But this rule is not necessarily limited to such cases. It may be applied in a case of permanent injury to real estate when the issue is between private persons. An illustration of this may be found in Williams v. Fulmer, 151 Pa. 405. In that case the plaintiff sought to recover from the defendant compensation for an injury to his property by reason of the diversion of the water of a navigable river from its natural channel in front of his land, and it was held that "compensatory damages in such case would be the depreciation in value of the property, if the injury were permanent, or the cost of removing the obstruction, whichever was the lower amount." In our case the defendant made no answer to the plaintiffs' evidence in relation to the cost of raising the lot and buildings. Its evidence was principally directed to the establishment of its claim that the matters complained of by the plaintiffs were a benefit to and improvement of their property.

The cases cited by the defendant are not analogous to the case at bar. This will sufficiently appear from an examination of them.

The defendant having located and constructed its railway on

the public road without the consent of the abutting property owners, is liable to them for an injury done to their property by such location and construction.   Its liability is the same as if it had obtained their consent to the construction of the railway on giving bonds to compensate them for such injuries to their property as its location and construction might inflict.   In view of this liability, and the nature of the injury for which the plaintiffs ask compensation, we are not satisfied of error in the rulings and instructions complained of.

Judgment affirmed.