# Thomas H. Hankey *v.* The Philadelphia Company, Appellant.

*Corporations—Eminent domain—Trespass—Actions.*

A company, entitled to exercise the right of eminent domain, having, without tender of bond or effort to agree as to damages, laid a gas pipe and erected a telephone line along a public road through the land of plaintiff, who knew of the work but made no active effort by bill in equity or otherwise to stop it, the company cannot be deprived of the easement acquired, but the owner is entitled to a common-law action to recover damages for the injuries sustained.

*Eminent domain—Gas pipe on public road—Measure of damages.*

The measure of damages for injuries sustained by a company enjoying

the privileges of eminent domain, which has entered upon a public road, without observing the forms required by law, should be determined in an action of trespass, on similar principles to those governing proceedings under general railroad laws, where land is taken or injured by the company; that is, the measure of damages is the difference between the market value of the land immediately before the defendant's entry and immediately after as affected by such entry, acts and occupation.

Argued May 13, 1897. Appeal, No. 123, April T., 1897, by defendant, from judgment of C. P. Armstrong Co., March T., 1896, No. 55, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, and ORLADY, JJ. Re-. versed.

Trespass for injury to abutting owner by laying gas pipe and telephone line on public road in front of plaintiff's premises. Before RAYBURN, P. J.

It appears from the evidence that the defendant company, having the right of eminent domain, laid an eight inch gas pipe in front of plaintiff's property and neglected to enter bond or arrange for a settlement of damages. It appears, moreover, that the plaintiff was present at his home in full view of the work as it progressed, and made no objection. The plaintiff and his son were also employed in working on the road and were both paid for their services.

On the trial the entry was treated by the plaintiff's counsel and by the court largely as though it were an ordinary action of trespass, quare clausum fregit, and in his general charge the court failed to give the jury proper instructions as to the measure of damages.

Verdict and judgment for plaintiff for $75.00. Defendant appealed.

*Errors assigned* were (1) In refusing the motion of defendant to instruct the jury to disregard the testimony of A. J. Helfrich which motion and refusal were as follows: Mr. Buffington: We ask the court to instruct the jury to disregard the evidence of A. J. Helfrich as to the fixing of damages in this case. By the Court: We will refuse the request at present, and upon request of defendant, exception allowed and sealed. (2) In refusing the defendant's eighth point, which point and

answer are as follows : " 8. That the testimony of Jackson Hef-flefinger fixing the damages for the pipe line is not based upon the true basis for the assessment of the same and the court is requested to instruct the jury to disregard the same. *Answer :* That point is refused." (3) In refusing the tenth point of the defendant, which point and answer are as follows : "10. That the testimony of B. H. Hankey, fixing the damages for the pipe line is not based upon the true basis for the assessment of the same, and is irrelevant and the court is asked to instruct the jury to disregard the same. *Answer :* That point is refused." (4) In refusing the third point of the defendant, which point and answer are as follows : " 3. The true measure of damages for the fence alleged to have been injured, is the cost of renewing said fence in as good condition as it was before the alleged injury. No such evidence being offered the plaintiff is not entitled to recover for this item. *Answer :* That point we refuse under the evidence in this case. The testimony on the part of the plaintiff is that the fence was damaged some and it will be for you to say how much. The defendant's witnesses testify that the fence was scorched some but not to damage it in any way." (5) In refusing defendant's fourth point, which point and answer were as follows : " 4. That the true measure for the injury alleged to have been caused by the laying and maintaining of said pipe line is the cost of removing the same and restoring the ground to its original condition before the line was laid and no such evidence having been offered the plaintiff is not entitled to recover for this item. *Answer :* That point is refused." (6) In refusing to affirm defendant's second point, which point and answer are as follows : " 2. That the uncontradicted evidence shows that the plaintiff, Thomas H. Hankey, assented and encouraged the defendant in the laying of said line, and furnished material for assisting in laying the same, and that under such circumstances no trespass has been proven in laying and maintaining said line, and the plaintiff is not entitled to recover any damages therefor. *Answer :* That point is refused, but we say to you that the evidence on the part of the defendant was that there was no objection made by this man, and that they hired him to haul wood to make fires for the purpose of preparing the pipe for laying, and that he was present when they were doing it and

did not make any protest. The plaintiff himself testified that he never gave any consent and he does not remember whether he made any objection or not, but his recollection is that he did object." (7) In its general charge to the jury in the following sentence: "He (the plaintiff) has also stated to you the number of telephone poles that were put up, ten or eleven, I believe, and the number of trees that were trimmed or pruned by the employees of the company and the fences and the inconvenience he is put to by reason of the pipe line not being covered in certain places; and he fixes that damage at $150." (8) In its general charge to the jury as follows: "The next witness that is called on the part of the plaintiff is a Mr. Helfrich, A. J. Helfrich. He testifies as to the fact of the line being laid along this road, and where some portion of it was bare and uncovered; also as to the telephone poles and as to the trees, he was not cognizant of how many trees there were trimmed or cut; and he also testifies as to the obstruction of the drain because of the pipe and the flowing of water over this man's lot near his house. He fixes the damage at $200; he first states that $150 would be a low amount; then being interrogated further as to his opinion as to the matter he says $200." (9) In its general charge to the jury as follows: "Mr. Schreckengost testifies that he did not see or could not see that the land was damaged any by reason of the line going through it. You will remember on cross-examination he testified that he obtained fifty cents per rod for the line going through his land. That has nothing to do —the question of his statement of that fact has nothing to do with your fixing the amount of damage that Mr. Hankey is entitled to, if entitled to any, for this line going through his land. It is only given in evidence to affect the credibility of his testimony as to stating that Mr. Hankey had not received any injury by reason of the line going through his land." (10) In its general charge to the jury in the following sentence: "If he did that, why then your verdict must be for the defendant. If he did not, then you go further and take up the testimony and ascertain what damages he has sustained to his land by reason of their occupying it by the pipe line and the telephone poles, and what damage they did to his trees or fences, and that you will ascertain from the evidence."

*Orr Buffington,* for appellant.

*W. D. Patton,* for appellee.

OPINION BY WICKHAM, J., July 23, 1897:

In the summer of 1895 the defendant, a corporation entitled to exercise the right of eminent domain, laid an eight inch gas pipe in and on a public road passing through the plaintiff's farm, and also constructed a telephone line along the same highway.

No bond was tendered the plaintiff, nor was any attempt made to agree with him as to the damages. He was fully aware of what was being done by the defendant, and made no active attempt to stay the work, by bill in equity or otherwise. He is therefore estopped from depriving the defendant of the easement it acquired, but is clearly entitled to compensation, through a common-law action, for all the injuries he has sustained including those resulting from the permanent occupancy of his land. This right results from Art. XVI., sec. 8, of the constitution of 1874, and has been enforced by numerous decisions of our Supreme Court.

"In such a case as this the damages should be determined on similar principles as govern in proceedings under the general railroad laws where land is taken, injured or destroyed by the company, and the parties are unable to agree as to the amount of damages. It would be grievous to the parties, certainly grievous to one or the other, if the damages could not be finally settled in one action:" P. & L. E. R. R. Co. v. Jones, 111 Pa. 204; O'Brien v. R. R. Co., 119 Pa. 184. See also the very recent case of Thompson v. The Citizens Traction Co., 181 Pa. 131. The exceptional rule as to the measure of damages applied in Jones v. R. R. Co., 151 Pa. 30, does not govern the present case. In the case just cited the only injuries for which the plaintiff was held entitled to recover, were the deprivation of air and light caused by building a bridge above and across a city street, the abutments of the structure being on the defendant's own land. Here, not only is there an actual taking and occupation of the surface and subsoil of a portion of the plaintiff's rural land, over which the public have a mere right of way, but as well the diversion of water on and over his enclosed

ground, injury to his fences, destruction of trees, and obstruc-
tion of driveways to fields by the gas pipes. We therefore
think that the ordinary well known rule, namely, to allow as
damages the difference between the market value of the land
immediately before the defendant's entry and occupation and
the value immediately thereafter as affected by the defendant's
entry, acts and occupation, is the one applicable in the present
case: Thompson v. The Citizens Traction Co., supra.

A glance at the evidence, the rulings of the court during the
trial, and the charge to the jury, shows that the case was tried
from beginning to end on a wrong theory as to the rights of
the plaintiff and the liability of the defendant. The action was
treated as one of trespass pure and simple, in which damages
were to be recovered only up to the date of the bringing of the
suit; and the measure of damages to which the attention of the
jury was directed was that applicable to an ordinary action of
trespass. It was the duty of the court without being asked, to
instruct the jury, at least in a general way, as to the true meas-
ure of damages, or at any rate not to even indirectly suggest an
incorrect one.

In view of the fact that the permanent occupation of and
injuries to the plaintiff's land were largely excluded from the
consideration of the jury, and also considering that no second
action could be sustained, it may be seriously doubted whether
the appellant has been really injured, that is, whether the com-
pensation awarded was not less than would have been given if
the court had laid down the correct rule. Under the circum-
stances however, this is a matter with which we have nothing
to do, and we are therefore constrained to reverse.

We need not discuss the assignments of error in detail, but
will add that, at the next trial, damages should not be specifi-
cally allowed, as was done in the first, for things which are
merely elements in working out the problem as to how far, if
at all, the farm has been depreciated in value. It may be said
further, that tests not employed in the trial already had, will
have to be used in determining the competency and qualifica-
tions of witnesses called on to testify to the matter of damages.

Judgment reversed and venire facias de novo awarded.