## Elizabeth Hays, executrix of Edward Hays, *v.* The Bor-ough of South Easton, Appellant.

*Municipal law—Property taken for municipal improvement—Measure of
damages.*

In adjusting the burden of municipal improvement, each property owner
is to be credited with his contribution, in property injured, taken or de-
stroyed, and charged with the benefits to his property from the contribu-
tion of others.   The measure of liability, between each owner and the
public, is based on the difference between his contribution and the benefit
he receives; between the value of his property previous to the improve-
ment and its value afterwards, as affected by the improvement.   If its
value be made less, he is to be compensated for the loss; if made greater,
he is to be assessed for the increase.

*Municipal law—Improvements—Taking of private sewer—Measure of
damages.*

A municipality having taken a private sewer for public use the elements
from which the measure of liability is to be determined are apparent, the
landowner is to be charged with the benefits to his property arising from
the improvement made by the borough.   He is to be credited with his
contribution to this improvement in property taken, injured or destroyed,
which will include a more onerous servitude imposed upon the land and
the value of the sewer taken.

The fact that plaintiff's land may be worth as much after as before the
taking is not conclusive against a claim by plaintiff, there having been a
taking of private property for public use.

Argued Dec. 6, 1898.   Appeal, No. 46, Oct. T., 1898, by defendant, from judgment of C. P. Northampton Co., Dec. T., 1896, No. 63, on verdict for plaintiff.   Before RICE, P. J., ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed.   Opinion by SMITH, J.   Dissenting opinion by W. D. PORTER, J.

Issue awarded by court on appeal from report of viewers. Before SCOTT, J.

It appears from the record and evidence that plaintiff's decedent had constructed a sewer through his property from one street to another, for the use of his property and the purpose of conducting through it the surface water which flowed from higher lands beyond.   The borough afterwards built a sewer running through a street upon the higher ground and connected it with the sewer running through plaintiff's property.   The plaintiff elected to consider this action of the borough a permanent taking of the sewer and a lawful imposition upon the land of an easement, under the right of eminent domain.   Upon the petition of plaintiff viewers were appointed to assess the damages to the property.   From the report of the viewers the plaintiff appealed and the court awarded for trial this issue, " What damages is the plaintiff entitled to ? "

The court below charged the jury in part as follows :

[It is contended by the defendant in this case that the measure of damages in such a proceeding, as the evidence shows this to have been, is the difference between the market value of the property, the land itself, immediately before his private sewer was taken, for the public purposes of the borough of South Easton, and immediately afterwards ; and it is maintained by him that by the evidence here there is no difference whatever in the market value of that land unless it be that there was an advantage, and if the rule must be applied as is stated in this class of cases applicable to real estate, his contention would be true, and it would be my duty to instruct you under those circumstances to render a verdict in favor of the defendant.   But there are some exceptional conditions relative to the taking in this proceeding that make it different from the ordinary appropriation of land.   The case has been tried by both sides, and

the evidence presented upon the assumption that the borough actually took this property under the right of eminent domain, not that the injury, if any, arose by diversion of water merely into the drain. In this way I must submit it to you. The amount of damages only is in issue under the pleadings. If Edward Hays had completed the construction of a sewer over his own property to carry the surface drainage away for which he had purchased material in stone and otherwise to the extent of $2,000, so that it would to that extent increase its value, and the defendant, immediately after that sewer was thus constructed by him, had adopted a resolution to appropriate it, to connect with one of their own for the public use, they would thus appropriate to public purposes that for which the material of Edward Hays had contributed the value of $2,000, and if they might so appropriate it without any compensation, unless the land itself was depreciated, it would seem that the constitutional right of compensation for property taken had in some way been infringed. The market value of the real estate may not be impaired, but it would require him to pay for a sewer now made a public one. If he had constructed no sewer, but the borough had adopted this channel over which the surface water drained as the course of a sewer which they intended to erect, and had built one over it, the land would have received, so far as he was concerned, the same benefit of that construction without expense to him, and, therefore, the wide difference in those two conditions requires us to ascertain whether the rule is the same under both the circumstances that I have stated. It would seem as if there must be some easy solution of this problem. I have said that the damages are to be assessed to a property holder not only by reason of the taking of real estate, but by reason of taking fixtures, or of personal property, and if instead of Edward Hays having contributed any stone and material, the borough of South Easton had actually constructed the sewer and furnished that stone and material, the inquiry here would be, what was the difference in the market value of the property as it existed immediately before their appropriation of it and immediately afterwards. . . .

Now, if the borough of South Easton had built this sewer, and, in doing so, had taken the stones that they found under the surface upon the place where it was located and used them

in the construction, then the measure of damages would have been not only the difference in the market value of the land before and after the taking, if there was any, but it would be for the additional value of the material that they thus took out of the land and used, unless the new use thus made of that material appreciated the real estate when completed, to which extent it would be offset. The rule is applicable to this present controversy. When the borough of South Easton adopted their ordinance to build a sewer along Cooper alley from some other territory beyond so as to connect with and take this private drain, immediately adjacent they found a sewer already constructed, with stones provided by Edward Hays and built by him over that property, and when they took that actual material they were in the same situation as a railroad company would be in constructing their road over the property of another and using the material which they took out of his ground. Whatever that is worth which they have thus taken, if you find that it exceeded the advantages conferred upon the property generally by the connection, the plaintiff may recover. Whatever the difference between the disadvantages and the advantages may be you would consider, as well as whatever difference there might be between the market value of the property as a whole immediately before the taking and immediately afterwards. But so far as the evidence in this case is concerned there is none whatever presented by the plaintiff of depreciation in the market value of the real estate in itself before and after the appropriation by the borough of South Easton of this sewer; of course, you understand that the property holder built the sewer himself for the purpose of improving rather than depreciating his property, and the act of the borough with relation to it was no physical act of disturbing its use, but merely the adoption of it as a public sewer by an ordinance of their councils. Therefore, you would confine your consideration of the amount of damages that the plaintiff would be entitled to receive, if any, to the value of the material when taken of which the sewer was constructed, and which was thus appropriated. But you must consider the advantages which Edward Hays still retained, or which remained upon this property, by reason of the fact that the sewer was still there and served for the property the same purpose and use exactly as it did when it was

constructed by him for himself. [2] . . . . [Are there also dis-advantages to this property? The borough having adopted it now as a public sewer neither Edward Hays's representatives, nor the successors in title, may change its location, but it is subject to the municipal discretion. He might, had it not been made a public sewer, have changed the course of that water at any place where it flows over his property, or turned it into the public highway, so that it was not cast upon a property holder below, but it is so no longer. He would have that right at least unless this channel were what is dominated an ancient water course. This has a technical significance; it does not mean any place where water is accustomed to flow, but it is a living stream with defined banks and channel not necessarily running all the time, but fed from other and more permanent sources than mere surface water.] [1] If this were ordinary surface drainage the borough could not collect into its own connected sewer from a remote and distant territory surface water which did not originally flow over this property, if the quantity of the water was thus largely increased without being responsible to keep that drain over Hays's land in repair and maintain it. This would be the situation for consideration in an action of trespass for diversion of water, but is not when the property itself is actually taken. Thus the burden of keeping it repaired being now cast upon the borough of South Easton, it would relieve the property holder from any expense in the care of it, and yet permit him to have the same advantage that he had before its adoption by the borough and when constructed by him. You will see that this would be an advantage to him which you are to consider in the calculation of the amount of damages which the plaintiff may recover if he is entitled to recover at all. So also this connection now with the closed sewer in Cooper alley may appreciate the market value of the real estate on the whole. These are some of the considerations that you will reflect upon in endeavoring to arrive at a satisfactory result. [The plaintiff is entitled to recover the value of this material which is appropriated in stone and other material for the construction of the sewer measured by the amount of the disadvantages to him and the advantages which he receives in consequence of that appropriation, and the damages would not be the actual value of the material, if you find that there are

any other advantages to Edward Hays by reason of this public appropriation that he has the expense of the maintenance cast upon the borough, and that he has the same use of it as he had before it became public property.   The witnesses upon the part of both sides have said there is no difference in the market value of the real estate, and I have already said there is nothing to discuss upon that question.] [2]   [Upon the other proposition considered alone there is the testimony of Mr. Barr for the plaintiff, and that of Mr. Frederick for the defendant, who make an estimate of $350, but the methods by which they reach such a conclusion are before you.   Of course, you are to ascertain this actual loss based upon comparison of advantages and disadvantages from all the testimony in the case.] [3] . . . .

[The defendant has submitted a point in which he asks me to give you binding instructions for him; this point I deny.   The determination of it is left to you.] [4]

Verdict and judgment for plaintiff for $500.   Defendant appealed.

*Errors assigned* were (1–3) to portions of the judge's charge reciting same.   (4) In answer to defendant's point, reciting same.

*William C. Shipman*, with him *Aaron Goldsmith*, for appellant.—The facts of this case are undisputed.   The question of water course or no water course is unimportant.   The case before the court is not that of drainage of one town lot upon another, which is forbidden in cities and towns under the authority of Bentz v. Armstrong, 8 W. & S. 40; but it is the case of the accumulation of waters upon an extensive watershed, which flow from the side of a high mountain in a well-defined channel of the depth of three feet and the width of four feet, and which empty into a navigable river.   Such gulches and ravines exist in all the mountain cities and boroughs of the state, and have been declared legitimate drainage by the Supreme Court.

The borough built the culvert at the rear of plaintiff's lot and connected with his sewer at his own request, and the same water, which before the building of the borough sewer passed through his sewer, still continued to pass through his sewer as before, but to his advantage and without accumulating upon his lot.

How such an improvement can be called an appropriation of land is past finding out. To improve an ancient easement would be to destroy it. We therefore submit that the learned judge should have told the jury that there was no taking and no cause of action.

If the borough took the culvert, it was land and not material. It was palpable error for the judge to submit the question of taking materials when there was no evidence whatever in the record that materials were taken: Fullam v. Rose, 181 Pa. 138; Steinbrunner v. Railway, 146 Pa. 504; Railroad v. Alvord, 128 Pa. 42; Greber v. Kleckner, 2 Pa. 289; Musselman v. Railroad, 2 W. N. C. 105.

The defendant's point ought to have been affirmed. We have given the reasons for it in the argument on the first and second assignments of error. The reasons in brief are: first, the borough had the legal right to drain into the natural depressions across the Hays lot, and Hays really built no sewer, but simply walled out the old channel for his own convenience; second, the concurrent and unanimous testimony was that the property was not damaged, but enhanced in value.

*Edward J. Fox,* with him *James W. Fox,* for appellee.— Ravines through which surface water runs at times when there are heavy rainfalls are not natural water courses. To constitute a natural water course there must be a bed and banks or evidence of a permanent stream of running water: Weis v. Madison, 75 Ind. 241, 257; 39 Am. Rep. 135; Rice v. Evansville, 108 Ind. 7; 58 Am. Rep. 22.

In the present case we have a dispute as to whether this is a water course or not, and this question can only be determined by the jury: Eulrich v. Richter, 37 Wis. 226.

We have on Hays's land a section of a continuous sewer.

The borough has dominion and control over it. He has not. He dare not touch it or interfere with it in any way. The obligation of maintaining it is no longer his. The borough must do so. And this Hays sewer has become an integral part of the sewer system of the borough of South Easton. We say, therefore, that the learned judge has not been convicted of any error in the first assignment.

The appellee is not seeking to recover damages for the ap-

propriation of land over which this sewer is constructed. It is not a suit to recover damages for the taking of land in the ordinary sense, nor for the injury to property by reason of taking the land. Hence we do not assert that the tract of land remaining in the possession of Edward Hays, after the appropriation by the borough, was worth any less than it was before the appropriation. But we do assert that the borough took the property of the plaintiff. It is unimportant how that property is designated, whether it be called material or fixtures, or part of the realty. It appropriated the sewer for public use, and this sewer was property of some character.

The learned judge has gone quite as far as it was necessary for him to do in protecting the rights of the borough. His charge, taken as a whole, was perfectly fair to both of the parties, and we have full confidence that this court will declare by its judgment that the charge is free from error in any respect.

As we have already argued, there were disputed questions of fact which of necessity must be submitted to the jury for consideration. It was necessary for the jury to determine: first, the question of the existence of a water course, and second, the question as to the amount of damages sustained. The court would have been guilty of an error if these questions were withheld from the consideration of the jury.

OPINION BY SMITH, J., May 18, 1899:

In adjusting the burden of municipal improvement, each property owner is to be credited with his contribution, in property injured, taken or destroyed, and charged with the benefits to his property from the contributions of others. The measure of liability, between each owner and the public, is based on the difference between his contribution and the benefit he receives; between the value of his property previous to the improvement and its value afterwards, as affected by the improvement. If its value be made less, he is to be compensated for the loss; if made greater, he is to be assessed for the increase.

When the municipality, in its work of improvement, appropriates only the land, the problem of adjustment and compensation is comparatively simple. In the case before us, had the borough constructed a sewer across the plaintiff's land, the meas-

ure of damages would have been the difference between the value of the land affected by the improvement, before its construction, and the value afterwards, as affected by the easement thus created, less any increase of value arising from its construction. But the borough, instead of constructing the sewer, appropriated one already constructed by the landowner. This substituted a permanent servitude for the use which otherwise the owner could terminate at pleasure. His contribution to the improvement, therefore, was the easement thus created, and the expense of constructing the sewer, from which the borough was, by the act of appropriation, relieved. On the other hand, it is difficult to see how this proceeding could benefit the owner (except to relieve him from future maintenance of the sewer), or increase the value of the property affected by the improvement, since all the benefits to be derived from the construction of the sewer were already enjoyed. Yet, if any benefit is to be found, it should be charged to the owner.

If a natural water course existed on the plaintiff's land, the diversion thereto of water which otherwise would not reach it is an enlargement of the servitude for which the landowner should be compensated. If the general sewage of the borough, also, is turned into the water course, the servitude becomes still more onerous. If it was necessary or desirable to substitute an artificial sewer for a natural water course, such a sewer became a municipal improvement, to be paid for as other public sewers are paid for

It is not material whether the borough had, previous to the trial, diverted to the sewer water that did not naturally flow through the gully in which it was laid; it is sufficient that, by the appropriation of the sewer as part of its general system, the borough acquired the right to use it as a conduit for water from all sources. The damages are to be measured by the whole extent of the servitude to which the land is thus subjected, rather than by the actual quantum of use at any particular time.

Thus the elements from which the measure of liability is to be determined are apparent. The landowner is to be charged with the benefits to his property arising from the improvement made by the borough. He is to be credited with his contribution to this improvement in property taken, injured or destroyed. In the present case, this contribution embraces the permanent

and more onerous servitude imposed on the land, and the value of the sewer which the borough has taken for public use. This value is not necessarily fixed by the amount paid by the owner for its construction; the true measure is the cost of an adequate sewer, at the time of the taking, not exceeding the actual cost of the sewer taken. It does not dispose of the plaintiff's claim to show that his land was worth as much after his sewer was taken as before. The appropriation of the sewer is a taking of private property for public use, for which the owner is entitled to compensation, though the taking may leave the land across which it was built worth as much as before. Benefits and injuries to the land stand by themselves, to be taken into account as items of debit and credit. A taking of property which, in effect, compels the owner to contribute more than his due proportion to the improvement, stands by itself, and is to be taken into account aside from the balance resulting from a comparison of benefits and injuries to other property.

While the course of the trial in the court below was not strictly along the lines here indicated, it was not in conflict with the principles now stated. Under these principles none of the specifications of error can be sustained, and, as the plaintiff is not here complaining of the verdict, the judgment is affirmed.

W. D. PORTER, J., dissenting:

In the judgment of the court upon this appeal I cannot concur. The plaintiff's decedent had constructed a sewer through his property from one street to another, for the use of his property and the purpose of conducting through it the surface water which flowed from higher lands beyond. The borough afterwards built a sewer running through a street upon the higher ground and connected it with the sewer running through plaintiff's property. The plaintiff elected to consider this action of the borough a permanent taking of the sewer and a lawful imposition upon the land of an easement, under the right of eminent domain. Upon the petition of plaintiff viewers were appointed to assess the damages to the property. From the report of the viewers the plaintiff appealed and the court awarded for trial this issue, "What damage is the plaintiff entitled to?"

In the action of the plaintiff the borough acquiesced, and the

parties went to trial upon the theory that the borough had fixed upon the lands of plaintiff a permanent easement. The ques tion of damages is, therefore, to be determined in like manner as if there had been a formal taking under condemnation proceedings. The borough was invested with the privilege of taking private property for public use in the construction of its works, and the measure of damages to be recovered for property so taken, injured or destroyed is the depreciation in the value of the property of which that taken, or subjected to any servitude, is a part: Thompson v. Traction Company, 181 Pa. 131. The damages to which the plaintiff was entitled was the depreciation, if any, in the market value of the property, as a whole, which resulted from the conversion of the private sewer into a public one, to be controlled and maintained by the borough authorities.

In ascertaining the amount of damages resulting from the appropriation it was essential to consider every element which affected the value of the property both before and after the change in conditions. In ascertaining the value of the property immediately before the appropriation the land with all its buildings and improvements, including the private sewer, must be taken into consideration. The amount that it would take to construct the sewer was indirectly involved, but the real question was, what was the land worth with that private sewer through it; not what was the sewer worth apart from the land. The sewer was built for the use of the land, not as an independent enterprise. Having arrived at the value of the land before the appropriation, we must, in the same manner, ascertain the value immediately after the sewer became a public sewer, subject to the control of the borough authorities with the duty upon said authorities to maintain it. If as a result of the appropriation the property was worth less money, then the plaintiff was entitled to recover damages in the amount of that depreciation.

But while it is proper to consider the value of the buildings, roads, trees, sewers and other improvements as elements bearing on the difference of market value, an injury to or appropriation of such improvements is not to be considered as an independent item of damage, apart from the effect upon the property as a whole: Chambers v. South Chester, 140 Pa. 510; Dawson v. Pittsburg, 159 Pa. 317.

All the evidence in this case is in accord upon the real question at issue. Every witness interrogated upon the subject said that the appropriation of the sewer had no effect upon the value of the property. The learned trial judge instructed the jury that the plaintiff might recover damages on the theory that the materials of which the sewer was constructed were appropriated, and that on the basis of their cost the damages might be assessed, less the benefits accruing to the property of the plaintiff by reason of the appropriation of the sewer. In this we think there was error. The effect was to cause the jury to allow the plaintiff damages for the cost of the materials used in the construction of the sewer, as an independent element, without regard to the effect of the appropriation of the sewer upon the value of the property as a whole. It caused the jury to start in their calculation by giving the plaintiff a credit not authorized by law, and then required the borough to overcome this false balance by proof of special benefits.

The borough was not seeking to assess the property of plaintiff for benefits in excess of damages, and upon the record and under the evidence no such assessment for benefits could have been sustained. The question to be determined was the amount of depreciation in value of plaintiff's property as a whole, and the sewer was as much a part of the land as were the houses erected upon the lot. Whether the plaintiff was contributing more than his share to the sewer system of which his private sewer became a part was not material, and evidence as to what others had contributed would not have been admissible. Under the theory upon which this case was submitted to the jury a property owner in such a case might recover damages not only for the depreciation in the value of his land, but, in addition, in the amount of the benefit derived or expense avoided by the municipality in making the appropriation. In the present case the plaintiff has recovered a judgment, while it is upon all hands conceded that the appropriation did not depreciate the value of the property.