# Becker, Appellant, *v.* Lebanon & Myerstown Street Railway Company.

*Street railways—Wrongful construction of road—Injuries to land—Damages
—Malice.*

Where a street railway company lays its tracks on a public highway
without the consent of an abutting owner, and this is done wrongfully,
but without malice, and there is a resultant permanent injury to the real
estate, the extent of the damage caused thereby is to be measured by the
resulting depreciation in the value of the property.    In such a case no
malice can be inferred from the mere wrongful laying of the tracks, where
the act was committed before the relative rights of street railways and
abutting owners had been adjudicated by the courts.

The mere fact that the road was not located in the center of the high-
way, but along the side of the road where it worked a greater injury to the
landowner, does not affect the rule as to damages, or permit the owner
to sue as for successive trespasses.

Argued Oct. 27, 1905.    Appeal, No. 199, Oct. T., 1905, by
plaintiff, from judgment of C. P. Lebanon Co., Sept. T., 1900,
No. 144, on verdict for plaintiff in case of John Adam Becker
*v.* Lebanon & Myerstown Street Railway Company.    Be-
fore RICE, P. J., ORLADY, PORTER, MORRISON and HENDER-
SON, JJ.    Affirmed.

Trespass for injuries to land caused by the construction of
a street railway on a highway.    Before EHRGOOD, P. J.

The court charged in part as follows:

There are some facts in this case that are not disputed.    The
plaintiff, Mr. Becker, is the owner of a tract of land of eighteen
acres some distance east of Avon, fronting on the south side
of the Berks and Dauphin turnpike, a distance of about 650
feet.    Upon this tract of land he has a dwelling house, barn and
other outbuildings.    An orchard is on the premises also.    It is
limestone land.    [The defendant is a street railway company,
duly incorporated and constructed and is now operating a street
railway on the south side of said turnpike immediately in front
of the plaintiff's land.    The defendant constructed this rail-
way without any authority of law.    They had no right because
they had not obtained the consent of Mr. Becker to the con-

struction of the road in front of his premises on the turnpike. They operated the street railway until some time in 1897, when the court here refused to restrain the defendant from operating its road and also refused the prayer of the plaintiff to have the street railway torn up. In other words, the court then decided, not because the street railway company had the right to place the street railway where it placed it, or constructed it, but because the public became interested in it and by reason of the convenience to the public the court there then refused to interfere with the defendant company's road and refused to grant the prayer of the plaintiff in his bill in equity to restrain the defendant from operating its road and also refused to tear up the road. That case was appealed to the Supreme Court. The Supreme Court affirmed the court below and we must now take that to be the settled and final decision in the case. That is, in other words, the street railway company, the defendant in this case, now is there by authority of law. That is, it is permitted to be there and hereafter to operate its road, under the decision of this court, affirmed by the Supreme Court. In other words, it is a permanent occupation now of the plaintiff's land in the turnpike and the defendant from that time on was permitted, and is now permitted, and will hereafter be permitted to· operate its street railway in the usual and ordinary manner. So that up to the time when the court decided the equity case, which was finally decided by the Supreme Court, up to that time the defendant was on the plaintiff's land without any authority whatever. The contention between the plaintiff and the defendant in this case differs very materially, and it is because there was such a material difference as to the positions taken by the plaintiff and the defendant that this case probably took as long to try as it did and probably there is no exact parallel of the case, decided in this state,—at least none has been called to my attention. But as we view the law we are of the opinion, and therefore we so instruct you, that the plaintiff in this case is bound to recover all his damages in one action, that is, in the present action, if he has any damages, for the reason that all his damages that have accrued and that can accrue, can now be ascertained, by reason of the permanency of the construction and operation of this railway.] [1]   That the

street railway now is there and permitted to be there under a decision of the court, however, does not absolve the defendant company from compensating the plaintiff in damages for such injuries as he has suffered by reason of the depreciation of the value of his property by constructing the road and operating it hereafter, and the important question for you to determine in this case is, what damages has the plaintiff suffered in this case?

Defendant presented these points :

1. There is no evidence that would justify the jury in finding that the street railway company, defendant, acted maliciously in the construction of its street railway along plaintiff's land. *Answer :* That is affirmed. [24]

2. There is no evidence to justify the jury in finding that the street railway company constructed its railway in any other than a careful and skillful manner, and in such a way as to do as little damage to the plaintiff as possible. *Answer :* That is also affirmed. [25]

Verdict and judgment for plaintiff for $350. Plaintiff appealed.

*Errors assigned* among others were (1, 24, 25) above instructions, quoting them.

*Bassler Boyer*, for appellant.—The court instructed the jury that the proper and only rule by it to be applied in this case, in assessing the damages, if any, of the plaintiff, was the same as in cases of the lawful exercise of the right of eminent domain. This is error: Elder v. Lykens Valley Coal Co., 157 Pa. 490 ; Uline v. R. R. Co., 101 N. Y. 98 (4 N. E. Repr. 536) ; Rudolph v. R. R. Co., 186 Pa. 541 ; Robinson v. Black Diamond Coal Co., 57 Cal. 412 ; Coal & Iron Co. v. Tucker, 48 Ohio, 41 (26 N. E. Repr. 630) ; Berks & Dauphin Turnpike Road v. Ry. Co., 3 Pa. Dist. Rep. 55 ; Heilman v. Ry. Co., 180 Pa. 627 ; Pappenheim v. Ry. Co., 128 N. Y. 436 (28 N. E. Repr. 518) ; Penna. R. R. Co.'s App., 93 Pa. 150 ; Groff's App., 128 Pa. 621.

*C. K. Killinger* with him *S. P. Light*, for appellee.—In an action to recover damages resulting from the location, construction and maintenance of a street railway on a turnpike in a

township, without consent of the abutting owner, the measure of damages, in the absence of malice, is the depreciation in the value of the abutting owner's property, resulting from the change of grade and the construction and maintenance of the railway: Thompson v. Traction Co., 181 Pa. 131 ; Harrisburg v. Crangle, 3 W. & S. 460 ; Levering v. R. R. Co., 8 W. & S. 459 ; Pittsburg, etc., R. R. Co. v. Jones, 59 Pa. 433 ; Pittsburg, etc., R. R. Co. v. Bruce, 102 Pa. 23 ; Richards v. Buffalo, etc., R. R. Co., 137 Pa. 254 ; Paterson, etc., R. R. Co. v. Kamlah, 42 N. Y. Eq. 93 (6 Atl. Repr. 444).

OPINION BY RICE, P. J., April 23, 1906 :

There has been much litigation between these parties growing out of the construction and operation of the defendant's railway upon the turnpike in front of plaintiff's premises. It began with a bill in equity praying for an injunction, filed by plaintiff in June, 1893, after the location and construction of the railway was begun, but before any work was done in front of his premises. The bill was dismissed for want of due prosecution, but in 1897, upon appeal to this court, the decree was reversed and the bill reinstated : Becker v. Lebanon & Myerstown St. Ry. Co., 4 Pa. Superior Ct. 372. Notwithstanding the pendency of the bill and the anterior protest and objection of the plaintiff, the company went ahead with the work, completed the construction of the railway in front of his premises in July, 1893, and has since operated it as then established. The track was laid about seven feet from the southern boundary of the turnpike, and occupies what was known and used as a "summer road," being a part of the highway that is not macadamized.

After reinstatement of the bill the case came on to be tried under the new equity rules, before Judge McPHERSON, of the twelfth judicial district specially presiding, and amongst his findings of fact were the following :

"In building the railway the defendant used proper care and skill to conform at this point to the grade of the turnpike so far as it was reasonably practicable, and along plaintiff's land there has been no serious, and scarcely an injurious, change in the grade. At the entrance to the house a planked crossing has been made, and is maintained by the defendant in order to

facilitate passage over the track. The rails are of the T pattern, but the space between them and immediately outside has been filled up almost to the level of the rail, so that driving directly across them at the entrance to a field is accompanied with but slight inconvenience. Access to the house and fields has been interfered with very slightly, if at all. There is some risk in coming out of the house or lane, either on foot or by vehicle, because a car may be approaching, and it is necessary, therefore, for the pedestrian or the driver to take precaution by looking up and down the road in order to see whether a car is near at hand. At a point immediately outside of the gate there is no difficulty in seeing for about 1,000 feet in either direction. The existence of the track so near the fence causes occasional inconvenience by making it difficult and unsafe to tie horses in front of the house or elsewhere along the land, or to drive along the fence. Horses must be driven into the yard or the lane, or taken across the turnpike and tied upon the other side. It may be also that the construction of the railway has somewhat injured the plaintiff's land by obstructing the natural surface drainage, so that pools of water now form more easily after a heavy rain and run off with greater slowness. Concerning this, however, we make no specific finding, but assume for the present purpose that to some extent the injury exists.

." The community through which the railway passes is thickly settled and the travel is considerable ; cars run twice in every hour between Avon and Myerstown, and the convenience of the public is largely promoted by the existence of this means of travel. The service has been continuously maintained since the road was built, and a large section of the community has grown accustomed to its convenience and comfort. It has become an important means of transportation for the public along its line and for the towns which it connects. The interruption of its traffic would inflict great inconvenience upon the public and a serious loss upon the company. The amount of damage done to the plaintiff by the construction and operation of the railway need not be determined with any attempt at precision. It is enough to say that the evidence laid before the court shows plainly that whatever injury has been done is not considerable in amount, and may readily be compensated in damages."

In his conclusions of law, after referring to the uncertainty

that existed prior to the decision in Penna. R. R. Co. v. Mont-
gomery County Passenger Ry. Co., 167 Pa. 62, and other cases
in the same volume, as to the respective rights of a railway com-
pany, the abutting landowner and the local authorities in town-
ships, he said : " But during the uncertainty and confusion
incident to the entry of a new subject into the domain of legal
principle and· procedure, the railway was laid down, and this
fact, with the other facts in proof, has so changed the situation
that the plaintiff's demand for a mandatory injunction can only
be fairly considered in the light of the circumstances now exist-
ing." Then, after reviewing the two Heilman cases reported
in 175 Pa. at pages 188 and 200, and quoting from the opin-
ion of Mr. Justice WILLIAMS in 180 Pa. at p. 627, where the
petition for reargument was refused, Judge McPHERSON con-
cludes as follows : " So far as a court of first instance is con-
cerned, the rule thus laid down must be followed in like cases.
It is therefore decisive of the present controversy, and requires
us to refuse the plaintiff's prayer for a mandatory injunction
commanding the defendant to take up its rails in front of his
land. But the bill need not be dismissed. If the plaintiff de-
·sires to amend so as to ask for damages, the amendment will
be permitted even at this stage of the proceeding, and the dis-
pute upon this point can then be determined either by the court
or by an issue before a jury. The plaintiff may, of course,
decline to amend ; in that event the bill must be dismissed.
If dismissed, however, it will be at the defendant's costs, for
the decree of dismissal will be based, not on the plaintiff's want
of legal right, nor of the defendant's observance of legal right,
but on regard for the public interest and convenience, and on
this alone." The plaintiff having declined to amend, the bill
was dismissed, and upon appeal to the Supreme Court the de-
cree was affirmed in an opinion by Mr. Justice MITCHELL from
which we quote : " The learned judge below found that the
defendant railway company had constructed its track on the
turnpike in front of plaintiff's land without legal authority,
though not in intentional violation of law. This is now con-
ceded by defendant itself, and is the basis of plaintiff's bill.
Appellant plants himself firmly on his legal right, and if he
were in a court of law his position would be incontestable.
But he has come into a court of equity asking its aid by in-

junction, which is of grace and not of right. The court below refused relief in this form, upon the well-settled equitable principle that an injunction will not be awarded where the benefit to the complainant is entirely disproportionate to the injury to the respondent. This is the ground of the decision and raises the only question we have to consider." Later in his opinion he says: "In view of the learned judge's findings in the present case, on the loss to the defendant, the inconvenience to the public, the smallness of the injury to the complainant and its easy compensability in money, he could scarcely have reached any other conclusion than that complainant, however clear his right, should be left to his remedy in damages:" Becker v. Lebanon, etc., Ry. Co., 188 Pa. 484.

In the meantime the plaintiff had brought an action of ejectment against the company which came on for trial after the termination of the equity suit and resulted in a directed verdict and judgment thereon for the defendant which on appeal to this court was affirmed: 11 Pa. Superior Ct. 649. Upon petition for allowance of an appeal from our decision the Supreme Court, while not concurring in the reason given by the trial judge and this court, held that the judgment was right because the action of ejectment does not lie in such case. "The defendant was not in possession of the land in such sense that ousting it would put plaintiff in possession, and even if it were, plaintiff is not entitled to possession. He has only the fee in the soil subject to the possession and use of the surface by the turnpike company for public travel. The injury to him is in the illegal or excessive user of an easement of passage and travel, and his remedy for that is an action of trespass for damages." The court also called attention to the delay of the plaintiff in bringing the equity case to a hearing until "after the railway was completed and in operation, and it having in the meantime become a great public convenience," as an important element in the decision of that case: Becker v. Lebanon etc., Ry. Co., 195 Pa. 502.

The foregoing extracts from the findings and opinions in these two cases show the points of law and fact adjudicated in the equity case and the grounds of the decision. It is important to have them directly in view in the consideration of the present appeal and we shall refer to them later.

In 1900, shortly after the termination of the ejectment case, the plaintiff brought this action of trespass, and in his statement of claim alleged, inter alia, that the defendant " in July, 1893, without the consent of and against the protest of the plaintiff, and without possessing the right or franchise to construct a street railway from Lebanon to Myerstown, and to do the act from which the injury to the plaintiff results, . . . . willfully and maliciously entered upon, constructed and has operated continuously (daily) since 1893, and now operates a street railway, on, in . . . . the surface of the land of the plaintiff, contained and included in the said turnpike road, thereby taking the said land of the plaintiff, occupied by and with its construction or plant . . . . interfering with, preventing and destroying safe and easy access," to and from his land and buildings, and interfering " with the drainage from his said land. . . . Wherefore the plaintiff says he has already sustained and claims damages therefor from the defendant, because of its willful and malicious acts aforesaid in the sum, etc." Shortly afterward the plaintiff brought four successive actions for continuation of the injuries, to which the defendant pleaded in abatement the pendency of the first action. The court below sustained the pleas in abatement, and from its judgment in the first of these cases an appeal was taken to this court, which resulted in a reversal of the judgment: Becker v. Lebanon, etc., Ry. Co., 25 Pa. Superior Ct. 367. The first action was then brought to trial and resulted in a verdict against the defendant for $350, and from the judgment thereon this appeal was taken by the plaintiff.

The important and controlling question in the case, as it comes before us, is as to the measure of damages. The defendant claims, and the court so held, that the damages were to be assessed once for all, as in the case of a permanent injury, and were to be measured by the difference in value of the plaintiff's property immediately before the construction of the defendant's railway and its value immediately thereafter as affected by the change of grade and construction and operation of the railway. This position is well stated in the defendant's eighth point which was affirmed : " That in case the jury should find in favor of the plaintiff, they should not fix the amount of his damages by adding the separate amounts which they think he has suffered

from each of different items of damage of inconvenience to which he has testified, but they should consider these items only so far as they affect the market value of the property as a whole, and it is their duty to fix the amount of his damages, if any there be, by finding the difference in the market value of the property by comparing its market value before the street railway was constructed with its market value after the construction and operation of the street railway." The plaintiff, on the other hand, claims that the jury should have been confined to the damages sustained by the plaintiff between the date of the construction of the railway and the date of bringing this action, to be measured by "the difference or depreciation in the rental or usable value of his land, by reason of the said injuring, construction and operation."

When the judgment upon the plea in abatement was before us for review (25 Pa. Superior Ct. 367) we took pains to say that the truth of the plea was to be determined by an inspection of the records of the two actions and that facts which may have been alleged or proved in other reported cases between the same parties relating directly or indirectly to the same subject-matter could not be considered. But upon the effect of the allegation of malice we remarked : "Looking alone at the pleadings we have to deal with a case wherein it is alleged that a street railway was constructed, maintained and operated by the defendant in a highway, which inflicts an injury upon an abutting owner differing not only in degree but in kind from the injury done to other members of the general public, and, in addition to the injury to his adjacent land and the buildings thereon, imposes upon his land included within the limits of the highway an additional burden, and still further, was erected and is being maintained maliciously." We further said: "To hold that a corporation or a natural person acting without right or color of right and actuated by a malicious motive may demand that the damages for such wrongful and injurious acts as are complained of here shall be assessed upon the same basis as if they were done in the lawful exercise of the right of eminent domain would be contrary to sound principle and would be justified by no precedent to which our attention has been called." As no reason has been suggested, and none occurs to our minds, for qualifying the general propositions involved in these remarks,

it is necessary to determine whether the court committed error in declining to submit the question of malice to the jury, and in that term we include not merely ill will toward the plaintiff, but reckless or wanton disregard of his rights. The fact that when the plaintiff refused to give his consent to the construction of the railway in front of his premises, unless the defendant would lay the track in the center of the turnpike, the president of the company, replied : " Well, we will build it anyhow," or " we are an incorporated company and will build the road anyhow," taken in connection with the subsequent construction and operation of the railway notwithstanding the pendency of the equity suit, is relied on as proof of malicious intention to ignore the legal rights of the plaintiff. But the fair interpretation of this remark, in view of all the circumstances and the time when it was made, is not that the company would go ahead without regard to the rights of the plaintiff, but only that they would do so whether he consented or not; it was the contention of its counsel at that time that this was its charter right. It is to be borne in mind that this occurred in 1893 ; therefore it is to be viewed in the light of the remarks of Judge McPherson heretofore alluded to, that at that time there was much uncertainty on the subject, and of necessity many steps were taken in the dark. As shown by later decisions of the Supreme Court, the position taken by the defendant company and its counsel, that after condemnation proceedings and payment of the sum awarded to the turnpike company it had the right to construct and operate its railway without the consent of the abutting landowners, was erroneous. But, as shown by some of the common pleas decisions cited in the appellee's brief, it was not an absurd position ; and while this mistake of law cannot excuse the defendant from liability to render full compensation to the plaintiff, we think it does rebut any possible inference of malicious intention to injure the plaintiff or ignore his rights. Moreover, the question as to the circumstances under which the defendant laid its railway was the subject of adjudication in the equity case, and it was there distinctly found, that it constructed its track on the turnpike in front of plaintiff's land without legal authority, though not in intentional violation of law. In view of this finding, approved by the Supreme Court, we think the trial judge was right in holding

that the evidence would not support a finding, that the company proceeded with "malicious intention . . . . to ignore the acknowledged legal rights of the plaintiff," as suggested in the plaintiff's third point, or that its action "was a wanton invasion of the plaintiff's legal rights," as suggested in his tenth point, and in affirming the defendant's second point, that there was no evidence that would justify the jury in finding that the defendant acted maliciously.

It does not appear in the findings of fact in the equity case, nor in the evidence in this case, that the injuries of which the plaintiff complains are attributable to defective or improper construction or operation of the railway. In saying this, we have not overlooked what counsel have urged with regard to the filling as improper construction, but as to that there was a distinct finding in the equity case, that the defendant used proper care and skill to conform at this point to the grade of the turnpike so far as it was reasonably practicable and along plaintiff's land there has been no serious, and scarcely an injurious, change in the grade. It may be conceded for the purpose of this discussion that the construction and operation of the railway in the location chosen along the summer road injures the plaintiff in a greater degree than would be the case, if it had been laid in the center of the macadamized part of the highway. But that would have been just as unlawful as to locate it where it is. The defendant is a wrongdoer and must respond in damages for its unlawful act. But if the injuries complained of are not attributable to defective or improper construction or operation, but are such as are incident to the careful and ordinary construction and operation of a railway in the location chosen, while the amount of the damages the plaintiff was entitled to recover may have been greater, we cannot say that a different measure was applicable merely because the company did not choose another part of the highway for the location of its railway, which would have been equally unlawful. In short, under the evidence in the equity case and the evidence in this case as to the construction of the railway, the fact that it was located at the side, instead of in the center, of the highway cannot affect the determination of the question whether the damages were to be assessed once for all as in the case of a permanent injury.

We have quoted at great length from the equity case, because the decision there, considered in connection with the reasons assigned for it, seems to us to have an important bearing upon the question now under discussion. The general conclusion there reached was, that the plaintiff was not entitled to a mandatory injunction commanding the defendant to take up its rails, but should be left to his remedy in damages. This was not put upon the ground that the plaintiff's legal right, or the wrongfulness of the defendant's user of the highway in front of his premises, was in doubt and therefore should first be established by action at law ; both of these essentials to a claim for equitable relief were conceded on all hands to be present in that case. But it was held that the equitable principle, that an injunction will not be awarded where the benefit to the complainant is entirely disproportionate to the injury to the respondent, was applicable, and in arriving at this conclusion, the plaintiff's delay in bringing the case to a hearing, the loss to the defendant and the inconvenience to the public that would result from an injunction mandatory and destructive in its character, the smallness of the injury to the complainant, and its easy compensability in money, were mentioned as the controlling considerations. We think it fairly inferable, therefore, especially in view of the prominence given to the public interest and convenience, that the court in refusing equitable relief did not have in contemplation a legal right in the plaintiff to abate the injury " by his own mere act and authority," or to accomplish the same result indirectly, by first establishing his right in an action at law, and then bringing repeated actions for a continuation of the injury until the defendant shall be compelled to remove its tracks in order to escape constantly increasing awards of exemplary damages. (See 3 Bl. Com. 220 ; Wheatley v. Chrisman, 24 Pa. 298 at p. 303 ; Pollock on Torts, Bl. ed. *344). The idea very clearly conveyed is, not that there was available to the plaintiff a remedy at law to compel the removal of the railway, but that his injury was easily compensable in money damages, for the recovery of which there was an adequate remedy at law, and that, under the circumstances, this was his only remedy. This conclusion has the support of other cases, in which the extraordinary conditions growing out of the very common misap-

prehension that at first prevailed relative to the right to lay railways upon township roads, had been the subject of consideration by the Supreme Court. Some of these cases are referred to or reviewed by Judge McPHERSON, and we need not extend this opinion by going over the same ground again; but it will not be out of place to call attention to the remarks of Mr. Justice WILLIAMS in Penna. R. R. Co. v. Montgomery County Passenger Ry. Co., 167 Pa. 62 at p. 72, as to the remedy of the abutter where he has lost, or in any mode debarred himself of, the right to compel the removal of the railway laid without his consent. What was there said may not have been absolutely necessary to the disposition of the case before the court, but it is proper to allude to it here, because, first, in the equity case between these parties the plaintiff's delay in bringing the case to a hearing was held to be one of the obstacles in the way of his compelling the removal of the railway; second, because it was adopted, substantially, as one important ground of the decision in Thompson v. Citizens' Traction Co., 181 Pa. 131. In the case last cited the trial judge, it is to be noticed, laid down the same rule for measuring the damages that was applied in the case at bar, and stated as the reason therefor, " Neither the property owners nor the authorities of O'Hara township could compel this company to remove the road, and therefore it becomes a permanent fixture." The Supreme Court, by Mr. Justice McCOLLUM, said : " They " (the plaintiffs) " cannot compel a change of grade or location, nor remove the embankment which interfered with access to their lot and was necessary to the support and operation of the railway. Their only remedy was an action to obtain compensation for the injury inflicted: Penna. R. R. Co. v. Montgomery County Pass Railway Co., 167 Pa. 62. No good reason appears for holding that the rulings and instructions in regard to the measure of damages were erroneous. The mere fact that the defendant was not invested with the power or right of eminent domain is not sufficient warrant for condemning them. It is true that they were in accord with the settled rule for the ascertainment of compensation in a case where a corporation invested with the privilege of taking private property for public use has in the construction or enlargement of its works, taken, injured, or destroyed the property of another. But this rule is not neces-

sarily limited to such cases. It may be applied in a case of permanent injury to real estate when the issue is between private persons." The parallel between the two cases, so far as the right of the abutter to compel removal of the railway is concerned, is perfect. It may be said that in that case the plaintiff invoked the application of the rule for measuring damages in case of permanent injury, and that it was for him to elect whether to proceed for such damages or to sue from time to time and recover the damages that had accrued up to the time of suit brought. But in the recent case of Rabe v. Shoenberger Coal Co., 213 Pa. 252, where the defendant invoked the rule laid down in the present case, Mr. Justice POTTER reviewed at length the authorities relative to the measure of damages for a permanent injury to real estate, and amongst other cases cited and quoted at length from Thompson v. Citizens' Traction Co., in support of the conclusion : " that where there is a permanent injury to real estate the extent of the damage caused thereby is to be measured by the resulting depreciation in the value of the property. Permanency of the injury is the proper test for the application of this rule." Amongst the cases in which the Thompson case has been approved or followed we refer to Carpenter v. Lancaster, 212 Pa. 581 ; Hankey v. Philadelphia Co., 5 Pa. Superior Ct. 148 ; Osborne v. Delaware County, etc., Electric Ry. Co., 9 Pa. Superior Ct. 632.

We conclude that the court was right in holding that the plaintiff's injury was to be treated as permanent and in applying the rule as to the measure of damages laid down in Thompson v. Citizens' Traction Co., 181 Pa. 131.

All the assignments of error are overruled and the judgment is affirmed.